**Feivel GOTTLIEB, et al., Plaintiffs,**

v.

**Q.T. WILES, et al., Defendants.**

**Civ. A. No. 89–M–963.**

United States District Court,
D. Colorado.

June 25, 1993.

Paul F. Bennett, Steven O. Sidener, David B. Gold, P.C., San Francisco, CA.

Denis T. Rice, Robert E. Gooding, Jr., Helane L. Morrison, Carl L. Blumenstein, Kathryn M. Nelson, Todd E. Thompson, Howard, Rice, Nemerovski, Canady, Robertson & Falk, P.C., San Francisco, CA.

Gerald L. Bader, Jr., Bader & Villenueva, Denver, CO, Roy L. Reardon, Charles E. Koob, Michael V. Corrigan, Melany R. Gray, Paul C. Cumin, Nicholas Even, Simpson Thacher & Bartlett, New York City.

Steven J. Toll, Herbert E. Milstein, Cohen, Milstein & Hausfeld, Washington, DC.

James A. Calhoun, Calhoun, Benzin, Kademenos & Heickel, Mansfield, OH.

Cary B. Lerman, Dennis E. Kinnaird, George M. Garvey, Rita J. Miller, Munger, Tolles & Olson, Los Angeles, CA.

Robert T. McAllister, Martin, McAllister & Murphy, P.C., Denver, CO.

Alan M. Loeb, Andrew M. Low, R. Bruce Wark, Glen E. Keller, Jr., Raymond Moore, Davis, Graham & Stubbs, Denver, CO.

Robert J. Dyer, Paul Urtz, Stutz, Dyer & Miller, Denver, CO.

Kenneth G. Gilman, David Pastor, Gilman and Pastor, Boston, MA.

David G. Palmer, Gregory J. Kerwin, Gibson, Dunn & Crutcher, Denver, CO.

Michael Berger, Waldman, Corn, Koff and Berger, P.C., Denver, CO.

Lee Squitieri, Abbey & Ellis, New York City.

James Shpall, Jean Arnold, Wolf & Slatkin, Denver, CO.

Robert F. Hill, David R. Fine, Karen A. Tomb, Jeffrey M. Hall, Ronald L. Wilcox, Hill & Robbins, P.C., Denver, CO, Sidney B. Silverman, Harold B. Obstfeld, Silverman, Harnes & Obstfeld, New York City, Josef D. Cooper, Law Offices of Josef D. Cooper, P.C., San Francisco, CA.

Peter Bornstein, David H. Goldberg, I.H. Kaiser, Berenbaum & Weinshienk, P.C., Denver, CO.

Thomas D. Birge, Brega & Winters, P.C., Denver, CO.

John Halebian, Andrew Davidovits, Wechsler Skirnick Harwood Halebian & Feffer, New York City.

Mark Levine, Stull, Stull & Brody, New York City.

G.R. Eschbacher, Anchorage, AK.

William P. Lorea, Folkestone, Kent, United Kingdom, CT.

Melvyn I. Weiss, Charles S. Crandall, Milberg Weiss Bershad Specthrie & Lerach, New York City.

David A.P. Brower, Wolf Haldenstein Adler Freeman & Herz, New York City.

Timothy J. Dennin, Lowey, Dannenberg, Bemporad, Brachtl & Selinger, New York City.

Lee D. Foreman, Haddon, Morgan & Foreman, P.C., Denver, CO.

Lubna M. Faruqi, Kaufman Malchman Kaufmann & Kirby, New York City.

Robert F. Wise, Jr., David D. Brown, IV, Davis Polk & Wardwell, New York City.

Klari Nuewelt, Wolf Popper Ross Wolf & Jones, New York City.

R. Brooke Jackson, Harry Shulman, Holland & Hart, Denver, CO.

John Sullivan, Kevin J. Curley, William O. Purcell, Lord Day & Lord, Barrett Smith, New York City, Jeffrey A. Chase, Holme Roberts & Owen, Denver, CO.

Warren L. Perry, Tucson, AZ.

Geoffrey Francis Aronow, Arnold & Porter, Washington, DC, Peter Michael Kreindler, Arnold & Porter, New York City, B.J. Rothbaum, Jr., James P. Linn, Jack L. Neville, Jr., Ronald L. Ripley, Douglas L. Perry, Linn & Helms, Oklahoma City, OK, James E. Scarboro, Tim G. Atkeson, Arnold & Porter, Denver, CO.

Stacey L. Mills, Milberg Weiss Bershad Specthrie & Lerach, San Diego, CA.

Steven C. Wolfe, Longmont, CO.

· Frank A. Weg, Weg and Myers, P.C., New York City.

Stephen Kirk Ingebretsen, Gregory Allan Ruegsegger, Philip G. Dufford, Welborn, Dufford, Brown & Tooley, P.C., Denver, CO.

Edward H. Widmann, Michael W. Jones, C. Paul Swift, Hall & Evans, Denver, CO.

Roger P. Thomasch, Ballard Spahr Andrews & Ingersoll, Denver, CO.

Mark D. Flink, Peter J. Korneffel, Jr., Baker & Hostetler, Denver, CO.

Bruce A. Lampert, Schaden, Lampert & Lampert, Denver, CO.

Douglas E. Bragg, Bragg, Baker & Cederberg, P.C., Denver, CO.

Joseph D. Jamail, Frank Staggs, Jamail & Kolius, Houston, TX.

John McEldowney, Andrew J. Mytelka, Greer, Herz & Adams, Galveston, TX.

Scott E. Wood, Sullivan, Walsh, Rossbacher & Wood, Los Angeles, CA.

John A. Blue, Adams, Duque, Hazeltine, Los Angeles, CA.

Raymond J. Turner, Sherman & Howard, Denver, CO.

Leo R. Beus, Michael R. Devitt, Beus, Gilbert & Morrill, Phoenix, AZ.

Mark C. Overturf, Greengard, Senter, Goldfarb & Rice, Denver, CO.

J. Nicholas McKeever, Netzorg & McKeever, Englewood, CO.

Gary E. Parish, R. Daniel Scheid, Popham, Haik, Schnobrich & Kaufman, Ltd., Denver, CO.

Gerald W. Goodman, Boulder, CO.

Philip S. Warden, Rachel L. Taknint, Thomas J. Fuchs, Lisa F. Cetlin, Pillsbury, Madison & Sutro, San Francisco, CA.

William R. McLucas, Bruce A. Hiler, Herbert F. Janick, III, Daniel A. Nathan, Paul V. Gerlach, Catherine M. Shea, James B. Adelman, S.E.C., Washington, DC, Thomas D. Carter, S.E.C., Denver, CO.

H. Thomas Coghill, Coghill &. Goodspeed, P.C., Denver, CO.

Richard S. Vermeire, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO.

Michael B. Peterson, McCutcheon, Doyle, Brown & Enersen, Walnut Creek, CA.

Richard North Patterson, McCutcheon, Doyle, Brown & Enersen, San Francisco, CA.

George L. Vamos, Barbara L. Green, Richard M. Lucas, Ruh & Green, E. Michael Canges, Canges & Iwashko, P.C., Denver, CO, H. Michael Clyde, Lynne C. Adams, Grant A. Koppelman, Brown & Bain, P.A., Phoenix, AZ, for Coopers & Lybrand (Hong Kong).

George L. Vamos, Barbara L. Green, Ruh & Green, Denver, CO, for Coopers & Lybrand (Singapore).

H. Alan Dill, Dill, Dill & Carr, Denver, CO.

Lawrence W. Schonbrun, Berkeley, CA.

Aldo DelPiccolo, Fowler, Schimberg & Cowman, P.C., Denver, CO.

Hartley B. Martyn, Martyn & Van Der Velde, L.P.A., Cleveland, OH.

Luke J. Danielson, Gersh & Danielson, Denver, CO.

Mark C. McClanahan, Miller, Nash, Weiner, Hagger & Carlsen, Portland, OR.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

Following the entry of the order of November 27, 1992, approving the settlement of this class action under F.R.Civ.P. 23(e), the applications for attorneys' fees and expenses were referred to United States Magistrate Judge Bruce D. Pringle, sitting as a special master under F.R.Civ.P. 53. The special

master's report was filed January 4, 1993. A hearing on objections was held on April 16, 1993. Under F.R.Civ.P. 53(e), the court must accept the special master's findings of fact unless clearly erroneous. That rule also provides that the court may adopt the report, modify it or reject it in whole or in part. The special master's report does not contain separately stated findings of fact and conclusions of law. The court has the record from the hearings held by the special master on October 28, 1992, December 18, 1992, and December 29, 1992. The court also has direct personal knowledge of this case, the other cases involved in the global settlement agreement and related litigation in this court. As will be observed, the relationship of those cases is important in considering these fee applications. While there is no basis for rejecting any finding of fact as clearly erroneous and although the objectors have not challenged any of the factual findings as contrary to the record, a more complete statement of undisputed facts is necessary to establish an appropriate context for determining the issues now to be resolved.

The collapse of MiniScribe Corporation resulted in the filing of many securities cases in this and other courts. Four principal cases were developed as coordinated actions in this court: this case, *Gottlieb, et al. v. Wiles, et al.*, 89–M–963; *Connolly v. Hambrecht & Quist Group, et al.*, C.A. No. 91–M–170, brought by the MiniScribe bankruptcy trustee; *Standard Chartered Bank v. Coopers & Lybrand, et al.*, C.A. No. 91–M–408;[1] and, *ELLCO Leasing Corp. v. Coopers & Lybrand, et al.*, C.A. No. 91–M–930. The bankruptcy trustee's case was selected for the first trial because it had broader issues and wider impact than the other cases. On the eve of that scheduled trial, a global settlement agreement was achieved, settling all of the above cases.

The special master referred to the settlement as producing a fund of $44,000,000 for the shareholder class. That is somewhat overstated. If the agreement is fully performed, the global settlement fund for the

four actions will total $128,100,000. The proportionate share allocated to this case will be $44,000,000. At this time, $22,500,000 is in escrow for this class.[2] The remainder of the $44,000,000 due to the class is to be paid in annual installments due May 15 in each of the next three years. The final installment is due May 15, 1996. Thus, while the settlement is expected to provide $44,000,000, nearly half of the money will come from future payments on unsecured promissory notes. The risk of possible insolvency of one or more of the payors and the delay in distribution affect the present value of the settlement agreement to the members of the class. In this sense, the special master's reference to a $44 million settlement fund is overstated, as well as premature.

The settlement was facilitated by the efforts of Magistrate Judge Bruce D. Pringle in settlement conferences. Counsel for the plaintiffs in all of the cases in the global agreement were participants in the negotiations and settlement process as, of course, were counsel for the settling defendants. The pendency of the other coordinated cases and the efforts of the lawyers representing those other plaintiffs contributed significantly to the resolution of this action. There is no way to measure the contribution of class counsel relative to the other lawyers in achieving the global settlement. It is simplistic to say that a settlement fund of $44,000,000 was created through the efforts of class counsel.

The special master reviewed the time records submitted by counsel for the class and found that the litigation was managed with efficiency, avoiding duplication of effort. Additionally, the special master reported that lead counsel in the Hill & Robbins firm delegated much of the work to associates with lower billing rates. The special master also found that lead class counsel were well qualified to represent the class in this case. There has been no objection to any of these findings.

---

1. Standard Chartered Bank filed other actions that are contained in the global settlement agreement.

2. The court presumes, and has received no indication otherwise, that the installment due May 15, 1993, was paid.

■ The law of restitution requires an award of fees and expenses to the attorneys whose legal services create a common fund for the benefit of a class of claimants. *Central Railroad and Banking Co. v. Pettus,* 113 U.S. 116, 126–27, 5 S.Ct. 387, 392–93, 28 L.Ed. 915 (1885); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Historically, attorneys in common fund cases were awarded a percentage of the common fund. *Pettus,* 113 U.S. at 128, 5 S.Ct. at 393; *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). In 1973, however, the Third Circuit announced the "lodestar" fee calculation method in an attempt to correlate the amount of the fee award with the work done on a case. *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir. 1973) (*Lindy I*). Dissatisfaction with the procedures necessary to calculation of a lodestar has caused courts to return to use of a percentage of fund fee award. *See Court Awarded Attorneys' Fees: Report of the Third Circuit Task Force,* 108 F.R.D. 237 (1985). The percentage of fund method allocates a portion of the common fund for attorneys' fees, commonly between 20–30% of the fund. *See Camden I Condominium Association, Inc. v. Dunkle,* 946 F.2d 768, 775 (11th Cir.1991). The "lodestar" determination requires calculation of the number of hours reasonably spent on work necessary to the litigation and appropriate hourly rates for the lawyers performing those services. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The product—the lodestar—is presumptively a reasonable fee. *Id.* at 897, 104 S.Ct. at 1548. That figure may be adjusted by use of a "risk multiplier," taking into account such factors as risk of nonpayment, delay in payment, or unusual success in results. *See Pennsylvania v. Delaware Valley Citizens Council for Clean Air,* 483 U.S. 711, 716, 731–36, 107 S.Ct. 3078, 3081, 3089–92, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*) (O'Connor, J., concurring).

■ Neither fee calculation method has emerged as clearly preferable to the other, for each method has serious deficiencies. The Tenth Circuit Court of Appeals permits either approach. *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988), cert. denied, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Accordingly, the court's responsibility is to use the approach which is helpful in determining a fair and just award under the particular facts and circumstances of the case before it.

The special master reviewed numerous opinions and contrasted the percentage of the recovery method with the "lodestar" approach. In the end, the special master selected the percentage of fund method, awarding class and non-class counsel a total of 22.5% of the settlement fund. The essence of the class members' objections to the special master's report is that the use of a percentage of the fund as the basis for an allowance of fees results in excessive awards. They also objected to any payments to lawyers in the cases which were not certified as a class action.

■ The potential risk of non-payment, the delay in full distribution and the involvement of other counsel in the coordinated cases militate against the use of the percentage fee approach in this case.

The special master cited his reasons for using the percentage method. First, it was thought to most closely match the methodology employed in the marketplace. That view is shared in much of the literature. It is often said that a percentage of fund award will:

> give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible.

*In the Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 572 (7th Cir. 1992). The necessary assumption is that court certified class actions under F.R.Civ.P. 23 are analogous to securities litigation undertaken by plaintiffs pursuing individual claims through counsel selected by them and retained on a contingent fee agreement. The analogy is not apt. Class action securities litigation is unique. It ordinarily begins, as this case did, with multiple filings of lawsuits

in several different courts by different plaintiffs with separate counsel on a variety of complaints alleging multiple claims for relief and all seeking class certification. The very purpose of Rule 23 is to bring some order out of the resulting chaos by certifying a class as defined by the court to pursue identified claims through counsel appointed by the court. The court's obligation in selecting counsel is a fiduciary one requiring careful consideration of demonstrated ability to conduct the litigation efficaciously and efficiently. The court creates a somewhat artificial attorney-client relationship between selected counsel and thousands of persons whose awareness of the entire matter is probably limited to the notices received from the court.

Class actions differ from other litigation not only in the court's choosing counsel in whom it has trust and confidence, but also in the role undertaken by them. In the ordinary lawsuit, the client has basic information about the core factual elements of the claims for relief and can provide retained counsel with a foundation for the full development of the facts through discovery. These class action cases are commonly initiated by persons who know only that they have sustained some loss in their investment and have little knowledge of the facts beyond what was publicly reported before the filing of their complaints. Many of the allegations of the initial complaints can be made only on information and belief. Such was the case with class counsel's original complaint here. Amended pleadings are necessary as counsel pursue their investigation through discovery. This litigation followed that pattern.

When this court held the initial hearings on class certification, it was confronted with a variety of complaints filed by many law firms seeking to represent differently described classes of investors in MiniScribe common stock and debentures claiming that the markets for these securities were affected by fraudulent statements and material omissions made on behalf of MiniScribe Corporation over several years. After analyzing those pleadings and considering the qualifications of the lawyers filing them, Civil Action Number 89–M–963 was picked as the lawsuit to be certified as a class action and counsel filing that case became class counsel.

The court rejected the suggestion that it should form a committee of lawyers from those who had filed similar actions. That has often been done with some good effects. *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 203 (5th Cir.1981); *In re Union Carbide Corp. Business Securities Litigation*, 724 F.Supp. 160, 170 (S.D.N.Y. 1989); *In re Equity Funding Corp. of America Securities Litigation*, 438 F.Supp. 1303, 1338–1356 (C.D.Cal.1977). The disadvantages are that it often results in duplications of work and dilution of effort.

In keeping with this court's directions at the time of appointment of class counsel, Mr. Hill has, from time to time, requested the assistance of other attorneys for particular purposes. Those requests were granted. All of the lawyers who have provided legal services on behalf of the certified class with court approval have submitted their time and expense records. The special master grouped them together as class counsel, took their total hours of approximately 17,000, multiplied by an average hourly rate, and computed the figure of $2,959,250.00 as a lodestar. That amount was then given some consideration in the overall analysis using the percentage of settlement fund approach.

This court rejects the use of the percentage of the recovery approach in this particular case. As noted earlier, there is no comparable type of lawsuit in what some choose to call the marketplace for legal services. The other reasons suggested by the special master are not persuasive. The need for awarding almost a fourth of the fund to the lawyers as an incentive to pursue this type of case is not supported by any empirical evidence. Indeed, the clamor of the many counsel seeking to have their cases concerning MiniScribe securities certified suggests that their encouragement by rich rewards is not necessary.

Not only is there no ready analogy in the contingency fee-paying market to a class action securities case, the court's ability to make even a principled guess at a hypothetical market transaction between the class and class counsel is severely limited. Courts are

peopled with lawyers, not economists. As the Supreme Court recently noted, "it is neither necessary, nor even possible ... to mimic the intricacies of the fee-paying market in every respect." *City of Burlington v. Dague,* —— U.S. ——, ——, 112 S.Ct. 2638, 2643, 120 L.Ed.2d 449 (1992) (citation omitted). But eschewing these intricacies gives rise to another danger identified in *Burlington* that "[court] decrees would follow the 'market,' which in turn is based on our decrees" *Id.* at ——, 112 S.Ct. at 2642. Indeed there is strong reason to believe that the "market" for attorneys' fees created by federal courts has become a self-perpetuating source of windfall profits for the class action bar. Percentage of fund fee awards tend to systematically compensate class counsel at a rate above what they would have received in an efficiently functioning market. *See* Macey & Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation,* 58 U.Chi.L.Rev. 1, 24 (1991). In sum, the court does not find the arguments for the superiority of the percentage of fund over lodestar persuasive.

To be sure, the use of lodestar in common fund cases is out of fashion. Subsequent to the Third Circuit Task Force's Report, 108 F.R.D. 237, criticizing lodestar, many federal courts have returned to awarding fees on a percentage of fund basis. *See, Camden I, supra.* at 774; *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989); *In re Union Carbide Consumer Products Business Securities Litigation,* 724 F.Supp. 160, 170 (S.D.N.Y.1989) (calling lodestar "Mumbo Jumbo"). There are three major objections that have fueled the move away from lodestar: first, that lodestar involves onerous administrative burdens, turning the court into a "public utilities commission," *Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir.1986); second, lodestar is alleged to give counsel incentives to pad hours and protract litigation so as to inflate the lodestar figure, *Third Circuit Task Force,* 108 F.R.D. at 246–50; and, third, lodestar's allowance of a risk multiplier is said to be exceedingly subjective. None of these objections precludes the use of a lodestar calculation here.

The notion that picking a percentage of the fund is somehow less subjective than the lodestar method is not demonstrable. Whatever the methodology or legal theory utilized, the determination of an appropriate and reasonable reward for the services of lawyers requires analysis of specific facts. Generalized statements are of little consequence. Indeed, it can be said that whether the approach is percentage of recovery or lodestar, the factual components of the ultimate decision are much the same. This is recognized in the *Brown* case. Thus, whether the search is for a reasonable multiplier for a lodestar, or for what percentage of the recovery should be accepted as a reasonable basis for payment, the court must consider each of the 12 factors in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). The special master recognized that in his report. The relative importance of each of those factors will vary substantially according to the facts and circumstances of each lawsuit.

■ Therefore the proper focus in awarding fees is the proper amount of restitution to be made by the class to the attorneys, and nothing more. Attempts to calibrate an optimal level of securities litigation through attorneys' fee awards goes beyond the purpose of the common fund doctrine, *see Pettus, supra.,* and exceeds the competency of a court. Consequently, the economic incentives possibly resulting from this fee award should be viewed as only incidental to compensation due to the attorneys in this case.

As already observed, the results achieved through the efforts of class counsel are difficult to measure in this case because the payments to the class are but a part of the global settlement.

The special master noted that Hill & Robbins was retained on a contingent fee basis by the original plaintiffs filing this case. For the reasons stated in rejecting the "marketplace" analogy, that fact has no significance to the fee determination.

Finally, the special master thought that the initial involvement of other counsel was a unique situation supporting use of the percentage fee. That situation is common in these circumstances.

Much of the criticism of the lodestar approach results from a reluctance to undertake the tedious task of auditing detailed time records submitted by counsel. It is recognized that seldom does the court have the benefit of the workings of the adversary system in this effort. While objections were filed and heard by the special master, the objectors did not submit any detailed analysis of these records. That responsibility was delegated to the special master. He reported that he has reviewed these records in detail and found no fault with them. Parenthetically, it may be observed that careful selection of counsel to serve as class counsel should generate some trust and confidence that, as officers of the court, appointed by the court, these attorneys will report honestly and accurately the time spent and the work performed. The selection of Mr. Hill and his law firm was made with that trust and confidence and the special master's report confirms this court's expectations.

■ The special master considered it appropriate to determine the hourly rate component of the lodestar as that normally charged in the forum where the case is prosecuted. While that may be convenient, it disregards the differences in the overhead component of an hourly rate, as well as the experience, seniority and skill of the lawyers

involved. Thus, the rental expense for maintaining a law office and the salaries paid to supporting personnel are different in New York City and Denver, Colorado. When the court deems it appropriate to authorize the employment of services of lawyers who do not have an office in the forum location, they should not be penalized by restricting their rates to those charged locally. That is particularly true where, as here, services were performed in many locations in the course of the extensive investigation and discovery in this case. As noted in the special master's report, the assistance from lawyers in firms other than Hill & Robbins was approved because of their expertise in certain substantive areas or because of their location in cities where principal defendants were located.

The court has considered the hourly rates charged by all counsel serving the class in this case and finds them to be reasonable and accordingly adopts them as a part of the lodestar determinations. Additionally, the court accepts the special master's view of the efficiency with which the services were performed and finds that the hours reported were reasonably necessary to the performance of the duties imposed upon class counsel. Therefore, the lodestar figures for these lawyers are as follows:

| Law Firm | Hours | Avg. Rate | Lodestar |
|---|---|---|---|
| Hill & Robbins Denver, CO | 14,375.7 | $139.15 | $2,000,379.55 |
| Silverman, Harnes, Obstfeld & Harnes New York, NY | 1,474.0 | $354.34 | $522,303.75 |
| Cooper & Kirkham, P.C. San Francisco, CA | 1,038.7 | $261.38 | $271,499.00 |
| Lindquist, Vennum & Christensen Denver, CO | 21.7 | $272.93 | $5,922.50 |
| Totals | 16,910.1 | $165.59 | $2,800,104.80 |

Hill & Robbins billing rates ran from $275.00 for lead counsel, Robert F. Hill, to $190 for J.H. Evans and K.A. Tomb, to $125–$135 for junior associates, to 50.00 for law clerks. Mr. Hill billed 2,728.50 hours, accounting for approximately 19% of the time billed to the class. As relatively low average hourly rate billed by Hill & Robbins shows, much of the effort on the case was expended by junior attorneys, paralegals and law

clerks with billing rates below $135. Collectively, these associates, paralegals and law clerks accounted for 58% of the hours billed to the class. Hill aff. at 33–34. This shows remarkable economy and case management by Mr. Hill, who—without getting too deep into the time sheets—seems to have capably and efficiently pursued this case on behalf of the class. Hill & Robbins billing rates did not change over the three years of litigation.

Silverman, Harnes, Obstfeld & Harnes ("SHOH") billed the highest rates of class counsel, but their New York address on Lexington Avenue is a factor in that rate. More to the point, nearly all the work performed by SHOH was done by Mr. Silverman and Mr. Obstfeld, both named partners in the firm and experienced litigators in the securities field. The seniority and experience of the SHOH attorneys working on the matter are other factors in the billed rate. SHOH billing rates also held steady over the course of the litigation. From 1990–1992, Mr. Silverman charged $400 to hourly-fee paying clients; Mr. Oberstadt's hourly fee was $335.

Cooper & Kirkham, P.C. presents a detailed breakdown of the individuals working on the case. Its billing rates peaked at $360 per hour for work performed by partner Josef D. Cooper and descended to $95 per hour for work performed by lower level associates. Nearly 60% of the firm's work was done by Mr. Cooper. The billing sheets do not reveal whether the hourly rates changed over the course of the litigation.

Lindquist, Vennum & Christensen's work consisted of consulting with Hill & Robbins on MiniScribe bankruptcy matters. The firm's work was nearly all performed by Craig Christensen, a partner in the firm whose billing rate was $275 per hour.

■ These services have been performed during the past four years. The restitutionary principle requires the payment of interest for the delay in payment. It is appropriate to use the rates payable on federal judgments under 28 U.S.C. § 1961. The interest computations are as follows:

### Hill & Robbins

| Year | Lodestar | Interest | Compounded to 6/30/93 |
|---|---|---|---|
| 1989 | $ 93,969.75 | 7.66% | $ 121,688.56 |
| 1990 | $216,681.00 | 7.02% | $ 256,733.89 |
| 1991 | $953,827.80 | 4.41% | $1,017,614.11 |
| 1992 | $735,901.00 | 4.11% | $ 766,146.53 |
| **Total** | | | $2,225,276.09 |

### Silverman, Harnes, Obstfeld & Harnes [3]

| Year | Lodestar | Interest | Compounded to 6/30/93 |
|---|---|---|---|
| 1989 | $104,935.00 | 7.66% | $ 135,865.97 |
| 1990 | $ 88,708.75 | 7.02% | $ 105,106.32 |
| 1991 | $286,832.50 | 4.41% | $ 306,014.14 |
| 1992 | $ 41,827.50 | 4.11% | $ 43,546.61 |
| **Total** | | | $ 653,626.04 |

### Cooper & Kirkham, P.C.[4]

| Year | Lodestar | Interest | Compounded to 6/30/93 |
|---|---|---|---|
| 1992 | $271,499.00 | 3.41% | $ 280,138.78 |

### Lindquist, Vennum & Christensen [5]

| Year | Lodestar | Interest | Compounded to 6/30/93 |
|---|---|---|---|
| 1991 | $5,922.50 | 4.41% | $6,318.56 |

---

The interest is calculated using the lodestar from the annual billing summaries provided by class counsel compounded annually by the federal statutory interest rate applicable at the time of the annual billing summary. Interest is calculated up to June 30 of this year. To illustrate the method take Hill & Robbins 1989 billing records: the lodestar

---

3. There is a $200 discrepancy between the SHOH billing records and the fee request. According to the annual billing summaries, SHOH billed the following: 1989, $104,935; 1990, $88,-708.75; 1991, $286,832.50; 1992, $41,827.50. Added up, this gives a figure of $522,303.75, not $522,503.75 as the fee application and 1992 billing total says.

4. Cooper & Kirkham does not provide annual billing summaries. Consequently, the court will only award interest from the date of the final billing entry, 7/24/92.

5. Mr. Christensen's affidavit attests that all of his work on the case was performed during the 1991 calendar year.

of $93,969.75 is compounded annually for 3.5 years at the statutory interest rate applicable December 31, 1989 of 7.66%; this yields a total of $121,688.56.

This class action lawsuit had novel questions. While it was clear from the outset that there were many misstatements about MiniScribe in financial statements and other documents affecting the securities markets; it was and continues to be unclear as to who was responsible for those misstatements. This is not a case in which a public investigation produced a trail of accountability. Here, there were and still are substantial questions as to whether the defendants were perpetrators or victims of fraud. For example, it was the plaintiffs' contention that the auditors aided and abetted a violation of Rule 10b–5 by the manner in which audits were performed and those defendants have countered that they were misled in their work by those representing the company. Additionally, there were and are substantial questions concerning who controlled the company's conduct at the relevant times. These issues were not resolved by this litigation because the case settled as a part of the global settlement.

Adding to the complexity of this case is its relationship to many other lawsuits. Those include the bankruptcy of MiniScribe with the trustee pursuing claims on behalf of the bankruptcy estate. The other plaintiffs in the coordinated and related cases had claims different from the class action. It became apparent, early on, that the assets available to or through the defendants in payment of any adjudicated liabilities would be insufficient to satisfy the claims of all plaintiffs in all cases. That obviously was a motivation supporting the global settlement and a basis upon which this court approved the settlement of the class action.

Additionally, the theory of damages adopted by the class is problematical. There is no doubt that both general economic conditions and industry specific changes affected the value of the MiniScribe stock. Segregating losses attributable to the misconduct from those factors is extraordinarily difficult.

The court agrees with the findings and conclusions of the special master on the other *Johnson* factors, excepting the amount involved and results obtained.

The lodestar method provides a sound factual basis for determining the actual value of the legal services provided by class counsel in this case. The *Johnson* factors provide a reasonable approach to the exercise of discretion in determining the actual award.

Commonly, a number is selected as a multiplier applied to the lodestar as the multiplicand. That methodology suggests some mathematical precision for exercising the kind of value judgment to be made. It is as artificial as the selection of a percentage of the fee. At bottom, courts must recognize that these judgments are not to be mere mathematical models. They should reflect the court's determination of the aggregate impact of the *Johnson* factors.

The services of some of the class counsel are to be valued higher than others. Those with overall responsibility and accountability to the class and to the court should receive more than those who had more limited assignments.

The attorneys at Hill & Robbins all worked as lead counsel. Applying the *Johnson* factors, the court finds and concludes that a reasonable fee for the work of lead counsel's firm is $5,150,000.

Additional legal services have been and will be performed in connection with the appeal of the order approving settlement, any appeals from these fee determinations, and the distribution of the settlement fund. Those future awards will be based entirely on the lodestar approach, without enhancement.

The other lawyers selected by lead counsel for particular purposes as authorized by the court are considered as lawyers contracting for particular assignments. Their fees will be lodestar plus interest.

The special master considered it appropriate to award fees and reimburse expenses to the attorneys who filed the other lawsuits and who were not successful in their class certification efforts on the premise that payment of some fees to these lawyers promotes

the purpose of encouraging enforcement of the federal securities laws. While there is some support for that view in the decided cases, it is doubtful that it is necessary to induce lawyers to initiate these actions by the payment of some part of their time and expenses as solatium for the denial of their expectancy of a rich reward for serving as class counsel.

The experience of this court is that the initiation of multiple class action lawsuits immediately preceding, during or after the collapse of a corporation whose securities have been traded widely and publicly is an entrepreneurial effort by the law firms filing complaints. Those who fail to find favor from the court should not expect to recover the expense of that effort from those who were victimized by the liability producing conduct.

■ The recognized purpose of paying for legal services and necessary expenses out of a settlement fund is the equitable doctrine of restitution. Those who benefit from a fund created through the efforts of others should pay their proportionate share of the costs of recovering the common fund. That restitutionary principle has no relevance to the payment or reimbursement for the time and expenses of those who did not contribute to the creation of the fund. Here, the special master found that the work performed by non-class counsel was clearly duplicative of work undertaken by class counsel and, indeed, duplicative of the work of other non-class counsel. Therefore, the special master rightly recognized that the court could not conclude that the multiplicity of litigation existing before certification of this case and designation of class counsel provided any meaningful benefit to the class or significantly contributed to the ultimate result. Accordingly, no payments will be made to the plaintiffs and lawyers who were not appointed as class counsel or authorized by the court to assist class counsel. It should also be noted that these firms invariably represent their named plaintiffs on a contingency fee basis. One of the contingencies here was

being designated class counsel. The applications for fees and expenses by those identified in Appendix I to this opinion are denied.

■ The special master also awarded attorneys' fees and expenses to counsel for the two objectors, Timothy and Dorothy Welch and Albert D. Schonbrun. The rationale of the common fund doctrine permits such a fee award if the objectors' efforts contributed to the maintenance of the common fund. *See In re Public Service Company of New Mexico*, 1992 WL 278452 at 28 (S.D.Cal.1992). The objectors did not initially ask for attorneys' fees. However, once the special master made an award, the objectors asked to submit fee and expense affidavits.

■ An award of fees and expenses to objectors counsel is denied. The legal arguments presented by objectors did not contribute to maintenance of the fund. The principal argument of objectors that *Burlington v. Dague, supra.*, precludes the use of a risk multiplier in common fund cases is unpersuasive, and did not contribute to the maintenance of the fund.[6] This court had the duty to review the special master's report even if no objections had been filed. Counsels' other objections were similarly thin and in no way enhanced the class' recovery. The restitutionary rationale for a fee award is not present here. Furthermore, the language of the notice to the class specifically stated that "[a]ny member of the Class may appear at the hearing, at his or her own expense, to express approval of or objection to ... the issues". This language put the objectors on notice that no fee award would be forthcoming from this court.

■ An award of expenses is warranted to class counsel under the common fund doctrine. *Brewer v. Southern Union Co.*, 607 F.Supp. 1511, 1536 (D.Colo.1984); *Trustees v. Greenough*, 105 U.S. (15 Otto) 527, 537, 26 L.Ed. 1157 (1882). The special master awarded class counsel $760,101.56 in expenses, a reduction from the request of $837,844.63. The reductions came from de-

---

**6.** The court is unpersuaded by the expansive reading given to *Burlington* in *In re Bolar Pharmaceuticals Co.*, 800 F.Supp. 1091, 1095–96 (E.D.N.Y.1992), which held that *Burlington* for-

bids the use of risk multipliers in common fund cases. The common fund doctrine is an equitable doctrine, *Burlington* concerned the interpretation of a federal fee-shifting statute.

leting computer research, secretarial and law clerk overtime, office supplies and temporary help and a 50% reduction in the expense for in-house copying.

▆ Elimination of computer expenses such as Westlaw and Lexis research has been deemed clear error by the Seventh Circuit Court of Appeals. *Continental Illinois*, 962 F.2d at 570. The reason for allowing such expenses is twofold; one, without computer research, attorneys own billing rates would be higher; and, two, the fee paying market reimburses computer research and by disallowing expenses in fee awards the incentive is for lawyers to substitute their own time for the computer. The special master cited *Ramos v. Lamm*, 632 F.Supp. 376, 389 (D.Colo.1986), which disallowed computer research expenses by deeming it an overhead expense. That view is now outdated. Computerized research is more commonly treated as a reimbursable expense. The time-saving attributes of computerized research are such that it should be reimbursed and thus encouraged, as opposed to discouraged through relegation to an overhead expense. Accordingly, class counsel's computer research expenses should be allowed.

▆ The special master's disallowing of overtime for law clerks and secretaries is proper. Overtime is not normally an expense charged to clients, but is included in a firm's overhead. Finally, the limitation on in-house photocopying expenses to actual cost—which resulted in a 50% reduction in photocopying expenses—is consistent with prevalent billing practices.

The costs for computerized research are reinstated. The special master's other reductions are warranted. Counsel are also entitled to interest for expenses incurred. Accordingly, the court approves the following award of expenses:

Hill & Robbins applied for and documents $701,339.82 in expenses, which the special master reduced to $664,698.43 by eliminating computer research, secretarial overtime, office supplies and reducing by half expenses for photocopying. The special master erred in eliminating the computer research expenses; the $10,178.99 in expenses attributable to that service are reinstated. Hill & Robbins expenses thus amount to $674,877.42. An interest calculation from the date of the fee application, August 14, 1992, is warranted at the then applicable rate of 3.51%. The total award is $695,600.80.

SHOH applied for reimbursement of $99,202.71 in expenses. The special master reduced that amount to $64,309.25, eliminating computer expenses and reducing by half the travel and photocopying expenses because of insufficient documentation. The computer expenses of $4,618.19 are compensable. Therefore, SHOH will receive $68,927.44. An award of interest is warranted from the date of the fee application, August 14, 1992, at the rate of 3.51% compounded annually. With interest computed through June 30, 1993, SHOH's award for expenses totals: $71,043.99.

Cooper & Kirkham applied for $37,302.10 in expenses, and received $31,093.88 from the special master. The 50% reductions in photocopying and travel were warranted; $588.11 in computer research expenses are reinstated. Cooper & Kirkham is entitled to an expense award of $31,681.00. When interest is compounded at the 3.51% statutory rate, the expense award totals $32,654.84.

UPON the foregoing, it is

ORDERED that the fees and expenses determined in this memorandum opinion and order will be paid under the plan of distribution approved in the November 27, 1992, order approving the class action settlement, on a *pro-rata* basis with the class members. Interest on the delayed payments will accrue at the current statutory rate of 3.54% compounded annually.

*Appendix I*

Fee applications of non-class counsel

| Law Firm | Hours Reported | Lodestar Fees Requested |
|---|---|---|
| The Gold Firm, et al. | 3,930.00 | $1,087,981.25 |
| Opperman, Heins & Paquin | 78.75 | $ 12,641.25 |
| Stutz, Dyer & Miller; Gilman & Pastor | 1,070.60 | $ 274,033.00 |
| Wolf, Popper, Ross, Wolf & Jones | 162.80 | $ 59,974.50 |
| Lapidus & Reiff | withdrawn | |
| Waldbaum, Corn, Koff & Berger | withdrawn | |
| Abbey & Ellis | 512.25 | $ 185,595.00 |
| Kaufman, Malchman, Kaufman & Kirby | 212.50 | $ 64,502.50 |
| Lowey, Dannenberg, Bemporad & Silinger | 353.75 | $ 78,862.50 |
| Wolf, Slatkin | 163.45 | $ 22,119.80 |
| Wolf, Haldstein, Adler, Freeman & Hertz | 307.00 | $ 85,651.00 |
| Schriffrin & Craig | 53.75 | $ 16,125.00 |
| Calhoun, Benzin, Kademenos & Heichel | 166.30 | $ 15,649.00 |
| Joseph H. Weiss | 321.00 | $ 99,805.00 |
| Wechsler, Skirnick, Harwood, Halbian & Fiffer | 319.18 | $ 98,482.75 |
| Stull, Stull & Brody | 441.75 | $ 128,231.25 |
| Pomerantz, Levy, Haudek, Block & Grossman | 50.65 | $ 9,070.50 |
| Totals | 8,143.73 | $2,238,724.30 |

