Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

Arthur BARRY; Clifford Seiber; Morris Isaac; Robert Cahn; Leslie Jacobs; Jack Colman; James Back; Vincent Bury; Betty Goldberger; Wolf, Popper, Schiffrin & Craig; Stull, Stull & Brody; Wechsler, Skirnick, Harwood, Halebian & Feffer; Kaufman, Malchman, Kaufmann & Kirby; Gilman & Pastor; Stutz, Dyer & Miller, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht &

---

Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Edgar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

Michael VAN; Arthur Stein; Leslie M. Jacobs; Philip R. Burnham; Jack Colman; Robert Cahn; Morris Isaac; Richard B. Dannenberg; Neil L. Selinger; Wolf & Slatkin, P.C.; Wolf, Haldenstein, Adler, Freeman & Herz, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht &

Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Edgar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

Martin MARKMAN; Kevin Prongay; John Bach; Milberg, Weiss, Bershad, Hynes & Lerach; Cohen, Milstein, Hausfeld & Toll, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associ-

ates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Edgar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

POMERANTZ, LEVY, HAUDEK, BLOCK & GROSSMAN, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Edgar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

John MULLALY and Gold & Bennett, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I;

J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Edgar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

OPPERMAN, HEINS & PAQUIN, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Ed-

gar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

Arthur BARRY; Clifford Seiber, Morris Isaac; Robert Cahn; Leslie Jacobs; Jack. Colman; James Back; Vincent Bury; Betty Goldberger, Wolf, Popper, Ross, Wolf & Jones; Law Offices of Joseph H. Weiss; Abbey & Ellis; Schiffrin & Craig; Stull, Stull & Brody; Wechsler, Skirnick, Harwood, Halebian & Feffer; Kaufman, Malchman, Kaufmann & Kirby; Gilman & Pastor; Stutz, Dyer & Miller, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I;

J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Edgar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Timothy L. WELCH and Dorothy A. Welch, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Ed-

gar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Feivel GOTTLIEB; Thomas R. Bloom; Leroy B. Mott; Marialice Mott; Kim Coles; Rosemary T. Martin; Kirk Martin; Mark G. Cucarola, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

and

Timothy L. Welch and Dorothy A. Welch, Movants–Appellees,

v.

COOPER & KIRKHAM, P.C.; Silverman, Harnes, Obstfeld & Harnes, Movants–Appellants,

Q.T. Wiles; Gerald Goodman; William R. Hambrecht; Gary E. Koenig; Russell E. Planitzer; Paul N. Risinger; Patrick J. Schleibaum; Jesse C. Parker; William P. Lorea; Owen Taranta; Kenneth A. Huff; Warren Perry; Hambrecht & Quist Group; Hambrecht & Quist Venture Partners; Coopers & Lybrand; J.H. Whitney & Co.; J.H. Whitney Associates; Coopers & Lybrand (Singapore); Coopers & Lybrand (Hong Kong); Phoenix Venture (BVI) Limited; H & Q Ventures International C.V.; H & Q Ventures IV; William R. Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Sarah Hambrecht, as Trustee of the Hambrecht 1980 Revocable Trust; Q.T. Wiles Investment Joint Venture I; J.F. Shea Co., Inc.; William R. Timken; Arthur Rock; H & Q Alliance Fund; Hamquist; Banner Partners; Bryco Investments; Peter O. Crisp; H & Q Investors; Crisp Computer Corporation; Ed-

gar L. Lowe; Richard M. Kulp, as Trustee of the Kulp 1983 Revocable Trust; Paloa S. Kulp, as Trustee of the Kulp 1983 Revocable Trust; John R. Johnston; Ta–Lin HSU; MiniScribe Corporation, Defendants.

Nos. 93–1316, 93–1317, 93–1334, 93–1338, 93–1339, 93–1367, 93–1389, 93–1336 and 93–1337.

United States Court of Appeals, Tenth Circuit.

Dec. 9, 1994.

Robert F. Hill (Karen A. Tomb, John H. Evans, and Jeffrey M. Hall with him on the brief), Hill & Robbins, P.C., Denver, CO, for plaintiffs-appellees.

Josef D. Cooper, Cooper & Kirkham, P.C., San Francisco, CA (Tracy R. Kirkham, Cooper & Kirkham, P.C., San Francisco, CA, and Sidney B. Silverman and Harold B. Obstfeld, Silverman, Harnes, Obstfeld & Harnes, New York City, with him on the briefs), for movants-appellants, on their own behalf.

Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, New York City (William S. Lerach, Charles S. Crandall and Pamela M. Parker, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Herbert E. Milstein, Steven J. Toll, Andrew N. Friedman, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Robert J. Dyer III, Stutz, Dyer & Miller, Denver, CO, Lubna M. Faruqi, Roger W. Kirby, Kaufman, Malchman, Kaufmann & Kirby, John Halebian, Wechsler, Skirnick, Harwood, Halebian & Feffer, Jules Brody, Mark Levine, Stull, Stull & Brody, Joseph H. Weiss, New York City, Kenneth G. Gilman, David Pastor, Gilman & Pastor, Boston, MA, Robert S. Schiffrin, Schiffrin & Craig, Bala Cynwyd, PA, Stephen D. Oestreich, Wolf, Popper, Ross, Wolf & Jones, Lee Squitieri, Abbey & Ellis, New York City, Lisa G. Peelish, Wolf & Slatkin, P.C., Denver, CO, David A.P. Brower, Wolf, Haldenstein, Adler, Freeman & Herz, Stanley M. Grossman, Stacey Dana, Pomerantz, Levy, Haudek, Block & Grossman, New York City, Paul F. Bennett, Gold & Bennett, P.C., San Francisco, CA, Samuel D. Heins, Karen M. Hanson, Heins, Schatz & Paquin, Minneapolis, MN, with him on the briefs), for movants-appellants, on their own behalf.

Joseph P. McCafferty (Hartley B. Martyn, Robert J. Van Der Velde and Laura DiVincenzo, on the briefs), Martyn & Van Der Velde, Cleveland, OH, for movants-appellees/movants-appellants Timothy and Dorothy Welch.

Before ANDERSON, FAIRCHILD,* and BARRETT, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

In these eight consolidated appeals, we address the propriety of the district court's award of attorneys' fees to some of the many lawyers who participated in the multitude of securities actions, and subsequent class action settlement, which followed the collapse of the MiniScribe Corporation, a publicly traded company which manufactured computer disk drives. At issue is what portion

---

* The Honorable Thomas E. Fairchild, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

these attorneys may receive of a $44 million fund created by the settlement of *Gottlieb v. Wiles*, District Court No. 89–M–963, a class action certified on behalf of MiniScribe shareholders. A subsidiary, but important, issue is what deference must be paid to the recommendation of the special master to whom the fee applications were initially referred. There are three groups of appellants: (1) the "Class Counsel Appellants," two of the four law firms who were counsel for the Gottlieb plaintiffs and whose members were designated as class counsel in the *Gottlieb* class action; (2) the "Non–Designated Counsel Appellants," counsel for plaintiffs in actions which were not designated as a class action; and (3) the "Objector Appellants," Timothy L. and Dorothy A. Welch (the "Welches"), class members who objected to the fee petitions submitted by all counsel, as well as their attorneys. For the following reasons, we REVERSE and REMAND.

## BACKGROUND

The first shareholder action filed following the demise of MiniScribe was *Mullaly v. MiniScribe Corp.*, filed on February 28, 1989 by the law firm of Milberg Weiss Bershad Hynes & Lerach ("MWBH & L"), one of the Non–Designated Counsel Appellants in this case. Among the subsequent shareholder class actions filed was *Gottlieb v. Wiles*, No. 89–M–963, filed on May 31, 1989 by the law firms Hill & Robbins, P.C., ("H & R"), Silverman & Harnes ("S & H"), and the Law Offices of Josef D. Cooper, P.C. ("Cooper"), Class Counsel Appellants in this case. On June 15, 1990, the district court orally certified the *Gottlieb* action alone to proceed as a class action on behalf of MiniScribe shareholders, and it appointed Robert F. Hill, of H & R, as sole class counsel. The court subsequently confirmed these designations in its

October 16, 1990 "Order Certifying Class Action." Appellants' J.A. at 103. The court thereafter appointed as additional class counsel certain other members of H & R, as well as members of S & H, Cooper, and Lindquist, Vennum & Christensen ("LV & C"). *Id.* at 104A. Counsel for cases not certified as class actions, including Non–Designated Counsel Appellants, were not designated as class counsel and ceased participation in the litigation.

On July 22, 1991, the district court directed that discovery and other pretrial proceedings in *Gottlieb* be coordinated with three other actions filed by certain MiniScribe creditors and the MiniScribe trustee in bankruptcy. The district court subsequently determined that the trustee's case would proceed to trial first.

On the eve of that trial, the parties reached a global settlement, settling all the coordinated cases. Of the $128.1 million settlement fund for all four cases, $44 million was allocated to the shareholder class in the *Gottlieb* action.

After the district court approved the settlement, the Welches, as unnamed class members, appealed to this court, challenging the settlement agreement.[1] We affirmed the approval, in an opinion which also held that "formal intervention is a prerequisite to an unnamed class member's standing to appeal" a settlement. *Gottlieb v. Wiles*, 11 F.3d 1004, 1009 (10th Cir.1993).[2]

Following its approval of the settlement agreement, the district court referred applications for attorneys' fees and costs to Magistrate Judge Bruce D. Pringle, sitting as a special master pursuant to Fed.R.Civ.P. 53 and 28 U.S.C. § 636(b)(2). The special master conducted three days of hearings, and filed his report on January 4, 1993. The

---

1. The Welches actually filed three appeals, which we consolidated for purposes of appellate disposition. Two of the appeals were from denials of motions to intervene in the class action, and the third was from the order approving the settlement.

2. Although we held that the Welches, as unnamed class members, lacked standing to appeal the approval of the settlement, we nonetheless waived the standing requirement and addressed

the merits of the Welches' appeal. We did so because of the "unique circumstances" of the case—i.e., because a remand to the district court for a ruling on the Welches' motion to intervene would further protract an already protracted multiparty litigation, and because the Welches had been permitted to fully participate in proceedings relating to the merits of the settlement agreement in the district court. *Gottlieb*, 11 F.3d at 1013–14.

master's report recommended an award of attorneys' fees totalling $9,900,000—22.5% of the total class settlement fund. It also recommended awarding costs of $907,029.27.

The district court conducted a hearing on objections to the special master's report on April 16, 1993. The court issued its memorandum opinion and order on June 25, 1993, in which it employed a different methodology in arriving at a reduced award of attorneys' fees. *Gottlieb v. Wiles*, 150 F.R.D. 174 (D.Colo.1993). Two separate judgments were entered in accordance with the district court's order, and these appeals followed.

## DISCUSSION

■■■ The settlement in this case created a "common fund" from which the plaintiff class obtained a benefit. Attorneys' fees are appropriately awarded from that fund, on the theory "that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *see also Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1482 (10th Cir.1993); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), *cert. denied*, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).

This case involves, in part, the proper methodology for awarding attorneys' fees out of a common fund. The special master awarded fees as a percentage of the fund, while the district court rejected that approach and awarded a lower fee based on the reasonable lodestar analysis. Under either methodology, the fee awarded must be reasonable. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir.1993); *Brown*, 838 F.2d at 453.

### I. *Percentage of the Fund vs. Lodestar*

Many courts have addressed the propriety of utilizing the percentage of the fund instead of the lodestar in calculating attorneys' fees in common fund cases. *See, e.g., Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir.1994); *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994); *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 515–17 (6th Cir.1993); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265–71 (D.C.Cir.1993); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771–74 (11th Cir.1991). There are recognized advantages and disadvantages with each method, although the more recent trend has been toward utilizing the percentage method in common fund cases. *See generally* Monique Lapointe, *Attorney's Fees in Common Fund Actions*, 59 Fordham L.Rev. 843 (1991); Christopher P. Lu, *Procedural Solutions to the Attorney's Fee Problem in Complex Litigation*, 26 U.Rich.L.Rev. 41 (1991).[3]

In *Brown*, we held that calculating an attorneys' fee award as a percentage of a common fund was "not *per se* an abuse of discretion." *Brown*, 838 F.2d at 454. We did not, however, explicitly express a preference for one methodology over the other in common fund cases, although we recognized and discussed at length the fundamental differences between common fund cases and statutory fee-shifting cases, and how those differences affect the analysis of a fee award. Furthermore, we held that the twelve factors originally developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) for statutory fee cases apply equally to percentage fee awards in common fund cases.[4] Our approach has been called a "hy-

---

**3.** Indeed, attorneys generally are departing more from calculating fees on an hourly basis, reflecting the fact that the number of hours spent on a particular piece of legal business is not always the best measure of the value of that work.

**4.** The 12 *Johnson* factors are: the time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, wheth-

er the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Johnson*, 488 F.2d at 717–19. As we acknowledged in *Brown*, the weight given to different factors may vary in common fund, as opposed to statutory fee shifting cases.

brid" approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar. Lapointe, *supra*, at 869–70.

In *Uselton*, we cited and discussed *Brown*'s holding:

> In *Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir.), *cert. denied*, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988), this court distinguished common fund cases from statutory fee cases and *recognized the propriety of awarding attorneys' fees in the former on a percentage of the fund, rather than lodestar, basis. Id.* at 454–56; *accord Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C.Cir.1993); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991).

*Uselton*, 9 F.3d at 853 (emphasis added). The two cited cases, *Swedish Hosp. Corp.* and *Camden I Condominium Ass'n*, are the only two circuit decisions explicitly rejecting the use of the lodestar method in common fund cases, concluding, after extensive analysis of the history and rationales of the two approaches, that the percentage of the fund method is the appropriate one for common fund cases. Other circuits since *Uselton* have explicitly held that either method is appropriate, depending on the particular circumstances of the particular case. *See Florin*, 34 F.3d at 565 ("We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court."); *In re Washington Pub. Power Supply*, 19 F.3d at 1296 ("[W]e restate the law of our circuit that, in common fund cases, no presumption in favor of either the percentage or the lodestar method encumbers the district court's

discretion to choose one or the other."); *Rawlings*, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."). At least one circuit has explicitly adhered to the lodestar method, acknowledging that the "prevailing trend in other circuits" was to use the percentage method. *Longden v. Sunderman*, 979 F.2d 1095, 1099 n. 9 (5th Cir.1992); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987) (suggesting that lodestar was the proper method in either a common fund or a statutory fee-shifting case).

In our circuit, following *Brown* and *Uselton*, either method is permissible in common fund cases; however, *Uselton* implies a preference for the percentage of the fund method.[5] In all cases, whichever method is used, the court must consider the twelve *Johnson* factors. The district court issued its opinion before *Uselton*, and therefore did not have the benefit of its implicit preference for percentage of the fund.

Because this case involves the propriety of the district court's decision to reject a special master's recommendation as to methodology and amount of attorneys' fees, we begin with a review of the special master's report and the district court's opinion.

## II. *Special Master's Report*

The special master initially reviewed both lodestar and percentage of the fund methodologies. He noted the mounting criticism of the lodestar, and the trend toward using a percentage of the fund in common fund cases. He correctly observed that under Tenth Circuit law then in effect, *Brown v.*

---

**5.** Several courts have observed that, while the Supreme Court has never explicitly addressed this issue, it has in fact always awarded fees in common fund cases on a percentage of the fund basis. *See, e.g., Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C.Cir.1993) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Central R.R. & Banking v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882)); *see also Camden I Condominium Ass'n*, 946 F.2d at 773 (citing same cases). The D.C.Circuit has similarly relied upon

the Supreme Court's dicta in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), in which the Court distinguished common fund from statutory fee-shifting cases, stating, "[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [the fee-shifting statute in question] reflects the amount of attorney time reasonably expended on the litigation." *Id.* 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16. This dicta has given comfort to those courts which prefer percentage of the fund in common fund cases.

*Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir.1988), either approach is permissible in a common fund case. He finally selected the percentage of the fund approach in this case for seven reasons: (1) it "most closely matches the methodology actually employed in the marketplace"; (2) because it matches the market, it "provide[s] incentive for counsel to pursue actions such as this on behalf of large groups of investors"; (3) it is less subjective than the lodestar plus multiplier approach; (4) it gives primary consideration to the results obtained by counsel; (5) because class counsel was initially retained on a contingent fee basis, a percentage fee most closely approximates the original agreement between client and counsel; (6) a fee expert retained by class counsel opined that percentage fee awards are "customary and reasonable" in cases like this one; and (7) because of the large number of law firms seeking compensation in this case, a lodestar approach could result in overcharging the class. Report of Special Master ("Report") at 1466–68, Appellants' J.A. at 1457.

Having determined that a percentage of the fund approach was appropriate, the special master followed *Brown*'s dictate to apply the *Johnson* factors and concluded that an appropriate lodestar for class counsel was $2,959,250, applying the hourly rate that is "normally charged in the forum where the case is prosecuted." Report at 14 n. 5, Appellants' J.A. at 1470.[6] He then specifically considered each remaining *Johnson* factor and concluded that an appropriate fee was 22.5% of the settlement fund, or $9,900,000.

He next turned to the issue of allocation of that fee among counsel who had submitted fee applications. He concluded that Class Counsel were entitled to ninety percent of the total fee awarded.[7] With respect to Non–Designated Counsel, he found that "[t]he work performed by non-class counsel was clearly duplicative of work undertaken by class counsel, and, in many instances, the efforts of the firms not ultimately selected to represent the class were duplicative of each other." Report at 24, Appellants' J.A. at

1480. He nonetheless recommended an award of ten percent of the total fee to Non–Designated Counsel, on the ground that the duplication of work was largely "unavoidable," permitting Non–Designated Counsel to recover some of their fees encourages enforcement of the securities laws, and the multiplicity of law suits initially filed enhances the possibility that at least one named plaintiff will be an appropriate class representative.

Finally, the special master concluded that counsel for the Objector–Appellants should receive some compensation for their legal work, on the theory that they presented their arguments "cogently and competently" and some arguments "resulted in reductions in the fees and expenses awarded to several of the applicants." Report at 31, Appellants' J.A. at 1487. They were therefore awarded a total of $7000 in fees and $1750 in expenses.

### III. *District Court's Opinion*

The district court conducted a hearing on objections to the special master's report. After acknowledging that, pursuant to Fed. R.Civ.P. 53(e)(2) the court "shall accept the master's findings of fact unless clearly erroneous," and that the court may modify the report or reject it in whole or in part, the district court rejected the special master's use of the percentage of the fund method, and instead utilized the lodestar plus multiplier to arrive at a lower fee award for Class Counsel. It also held that neither Non–Designated Counsel nor counsel for the Objector–Appellants was entitled to a fee award.

In rejecting the percentage of the fund approach, the court concluded that the special master's reasons for preferring the percentage of the fund method over the lodestar plus multiplier were "not persuasive." Mem. Op. & Order at 7, Appellants' J.A. at 1511. The court acknowledged that the use of the lodestar in common fund cases is "out of fashion," but it rebutted the most frequently

---

6. The special master stated that he had "reviewed class counsels' time records in some detail." Report at 13, Appellants' J.A. at 1469.

7. He did not specify exactly how the fee was to be divided among Class Counsel.

used arguments against the lodestar—i.e., that it burdens the courts, that it gives counsel an incentive to pad hours and protract litigation, and that any risk multiplier is too subjective.

■ In calculating its fee award, the court found that the hourly rates charged by all counsel were reasonable [8] and accordingly calculated lodestar amounts for each Class Counsel, plus interest at the rate payable for federal judgment under 28 U.S.C. § 1961. After stating its general agreement with the special master's analysis of the *Johnson* factors, except the amount involved and results obtained, the court concluded that a reasonable fee for H & R, as lead Class Counsel, was $5,150,000, calculated by reference to the lodestar amount of $2,000,379.55, as increased by a 2.6% multiplier to reflect "the aggregate impact of the *Johnson* factors." Mem.Op. & Order at 15, Appellants' J.A. at 1519. All other Class Counsel were compensated at lodestar plus interest (with no multiplier) on the theory that they were "lawyers contracting for particular assignments." *Id.*

The court also rejected the special master's recommendation to award some fees to Non–Designated Counsel, stating that such attorneys needed inducement to file securities actions:

The experience of this court is that the initiation of multiple class action lawsuits immediately preceding, during or after the collapse of a corporation whose securities have been traded widely and publicly is an entrepreneurial effort by the law firms filing complaints. Those who fail to find favor from the court should not expect to recover the expense of that effort from those who were victimized by the liability producing conduct.

Mem.Op. & Order at 16, Appellants' J.A. at 1520. Thus, Non–Designated Counsel were awarded no fees, since their efforts did not contribute to the creation of the fund.

The district court similarly rejected the award of any fees to the Objector–Appellants and their counsel, stating that their "legal arguments ... did not contribute to maintenance of the fund ... [and were] thin and in no way enhanced the class' recovery." Mem. Op. & Order at 17, Appellants' J.A. at 1521. All parties except H & R and LV & C appeal.

### IV. *Issues on Appeal*

Class Counsel Appellants argue that the district court erroneously substituted its own findings for those of the special master and erroneously determined Class Counsel's fee based on facts which are contrary to the

---

**8.** In so doing, the court rejected what it perceived as the master's limitation of the hourly rates to those charged in the forum location, stating, "[w]hen the court deems it appropriate to authorize the employment of services of lawyers who do not office in the forum location, they should not be penalized by restricting their rates to those charged locally." Mem.Op. & Order at 10, Appellants' J.A. at 1514.

While the proper hourly rate, a critical element of the lodestar analysis, is less critical in a percentage fund analysis, the special master prudently gave class counsel's lodestar some "weight in the overall analysis." Report at 14, Appellants' J.A. at 1470. In so doing, it observed that the "predominant view" is that the proper rate is that charged "in the forum where the case is prosecuted." *Id.* at n. 5.

In this circuit, we generally do limit the hourly rate to one " 'based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees.' " *Zuchel v. City & County of Denver*, 997 F.2d 730, 746 (10th Cir.1993) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)). However, in an unusual case, where the

prevailing party used out-of-town counsel whose rates were higher than those charged locally, we have permitted an award based on those higher rates:

" 'There is abundant evidence from which I find Wichita attorneys do occasionally charge $200.00 an hour or more for complex litigation. With all my respect and endearment for Wichita attorneys and law firms, it remains true there is neither a lawyer nor a firm in this town which could have devoted to this case the timely expertise, experience, and manpower put forth by Jones, Day.' "

*Reazin v. Blue Cross & Blue Shield*, 899 F.2d 951, 983 (10th Cir.) (quoting *Reazin v. Blue Cross & Blue Shield*, 663 F.Supp. 1360, 1453 (D.Kan. 1987)), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). In this case, no one suggests that H & R's average hourly rate of approximately $148 exceeds that normally charged in the Denver area. Other class counsel were retained by H & R, and approved by the court, and their rates were higher than H & R's rates. Both the special master and the district court held that these higher rates were nonetheless reasonable for the services rendered. We would not disturb that finding on appeal.

special master's findings, even though the court specifically held that the master's findings were not clearly erroneous. They also challenge the court's refusal to apply any enhancement or multiplier to their lodestar figure.

Non–Designated Counsel Appellants argue that the court erred in denying them any fee award "when their efforts were performed at the urging and instruction of the District Court and directly benefited the class." Appellants' Joint Statement at 4. They also assert that the district court erred in finding their work, done before Class Counsel was designated, was completely duplicative of Class Counsel's work.

The Objector–Appellants argue the district court erred in its award of fees and expenses to Class Counsel, erred in denying their counsel the opportunity to apply for a fee award, and erred in failing to appoint a guardian *ad litem* to protect the interest of the class.

### A. *Review of Special Master's Report*

■ Fed.R.Civ.P. 53(e)(2) provides that in non-jury actions, "the court shall accept the master's findings of fact unless clearly erroneous." *See also Martin v. University of S. Ala.,* 911 F.2d 604, 608 (11th Cir.1990); *Wooldridge v. Marlene Indus. Corp.,* 875 F.2d 540, 544 (6th Cir.1989); *Stone v. Commissioner,* 865 F.2d 342, 347 (D.C.Cir.1989); *Williams v. Lane,* 851 F.2d 867, 884 (7th Cir.1988), *cert. denied,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989); *Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.,* 772 F.2d 78, 85 n. 11 (4th Cir.1985); *Milliken Research Corp. v. Dan River, Inc.,* 739 F.2d 587, 592 (Fed.Cir.1984); *Potucek v. Cordeleria Lourdes,* 310 F.2d 527, 530 (10th Cir. 1962), *cert. denied,* 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734 (1963). Fed.R.Civ.P. 52(a) provides in pertinent part that "[t]he findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court." The district court reviews the master's legal conclusions de novo. *See Polin v. Dun & Bradstreet, Inc.,* 634 F.2d 1319, 1321 (10th Cir.1980); *see also Stauble v. Warrob, Inc.,* 977 F.2d 690, 697 (1st Cir. 1992); *Martin,* 911 F.2d at 608; *Williams,*

851 F.2d at 885; *Apex Fountain Sales, Inc. v. Kleinfeld,* 818 F.2d 1089, 1097 (3rd Cir. 1987); *cf. NLRB v. Monfort, Inc.,* 29 F.3d 525, 528 (10th Cir.1994) (in case where appellate court directly reviews special master's report, the court reviews master's conclusions of law de novo). *But see Wooldridge,* 875 F.2d at 544 (stating that the district court should review the special master's findings of fact and conclusions of law under the clearly erroneous standard).

■ The standard by which we review the decision of the district court in turn reviewing the report of the special master is slightly more complex, particularly where the district court disagrees with the special master. Generally, we review a district court decision awarding attorneys' fees for an abuse of discretion. *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1148 (10th Cir.1990). In this case, we review a district court decision partially accepting and partially rejecting a master's report. In addition, the district court made factual findings of its own. "Application by a district court of an erroneous standard of review in passing upon the master's recommendation constitutes an abuse of discretion." *National R.R. Passenger Corp. v. Koch Indus., Inc.,* 701 F.2d 108, 111 (10th Cir.1983). Similarly, misapplication of the relevant law or finding clearly erroneous facts constitutes an evident abuse of discretion. Where the district court rejects a factual finding by the master, we, like a majority of circuit courts, directly review the findings of the special master, thereby effectively ignoring the district court's review of the master's findings. *See Potucek,* 310 F.2d at 530 ("A majority of the courts of appeals have held that where the district court rejects a referee's findings as clearly erroneous, the court of appeals applies the clearly erroneous test to the decision of the referee."); *see also McDonald v. United Airlines, Inc.,* 745 F.2d 1081, 1088 (7th Cir.1984) *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985); *Uviedo v. Steves Sash & Door Co.,* 738 F.2d 1425, 1428 (5th Cir.1984) *reh'g granted,* 753 F.2d 369 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *In re Multiponics, Inc.,* 622 F.2d 709, 722 (5th Cir.1980); *O'Rieley v.*

*Endicott–Johnson Corp.*, 297 F.2d 1, 4–5 (8th Cir.1961); *Lines v. Falstaff Brewing Co.*, 233 F.2d 927, 930 (9th Cir.), *cert. denied,* 352 U.S. 893, 77 S.Ct. 129, 1 L.Ed.2d 88 (1956); *Ferroline Corp. v. General Aniline & Film Corp.*, 207 F.2d 912, 920 (7th Cir.1953) *cert. denied,* 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1098 (1954); *Mt. Clemens Pottery Co. v. Anderson,* 149 F.2d 461, 465 (6th Cir.1945), *rev'd,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).[9]

■ This case also raises the question of what deference, if any, should be afforded the master's selection of the method for awarding attorneys' fees, where the governing law permits either of two methods, depending on the particular circumstances of the case. In this case, the master selected the percentage fee method, after carefully reviewing the fee applications, "the supporting documentation and exhibits, and the evidence and arguments presented by the applicants and the objectors." Report at 3, Appellants' J.A. at 1459. The master made many factual findings concerning the fee applications and the effectiveness of various counsel's work. These factual findings must be accepted by the district court unless they are clearly erroneous, and the district court explicitly concluded that none of these findings were clearly erroneous.

In our view, the master's assessment of the particular circumstances of the case, while not a credibility determination, is "similar to a credibility finding." *National R.R. Passenger Corp.*, 701 F.2d at 111 (holding that a master's conclusion that a jury verdict was a compromise verdict, based upon the closeness of a "hotly contested" liability issue, is like a credibility determination which is not to be lightly disturbed). The district court should therefore have given some deference to the master's assessment that the percentage method was more likely to result in a reasonable fee in this particular case.[10] Instead, the district court simply rejected the use of the percentage fee method, for reasons largely unrelated to the particular circumstances of this case, concluding summarily that the special master's reasons for selecting it were "not persuasive."

■ We therefore hold that the fee award in this case should be calculated using the percentage fee method, and that the district court abused its discretion in rejecting the special master's selection of that method and replacing it with the lodestar plus multiplier method. We need not remand this case to the district court for its own selection of a percentage fee, however, because the 22.5% selected by the master is well within the range of permissible reasonable fee awards,

9. A few circuits have held that there is "a meaningful difference between direct review and review of review, and that the latter approach, one more deferential to the intermediate court, is the proper one." *Stone v. Commissioner,* 865 F.2d 342, 348 (D.C.Cir.1989) (citing *Milliken Research Corp. v. Dan River, Inc.,* 739 F.2d 587, 592–93 (Fed.Cir.1984); *United States v. Twin City Power Co.,* 248 F.2d 108, 112 (4th Cir.1957), *cert. denied,* 356 U.S. 918, 78 S.Ct. 702, 2 L.Ed.2d 714 (1958)). *See generally* Steven Alan Childress & Martha S. Davis, *Federal Standards of Review* § 2.03C (2d ed. 1991).

*Milliken* provides the most complete and thoughtful explanation of this "minority" view. The court explained:

We review the judgment of the district court and its underlying findings and conclusions. In reviewing any factual findings adopted or made by the district court, we must comply with Rule 52(a) [providing for review under the clearly erroneous standard]. However, the decision of the district court holding a finding of fact by the master clearly erroneous is not itself a "finding of fact," and our review of that decision is, thus, not controlled by Rule 52(a).

739 F.2d at 592–93 (footnote omitted). The court concluded that it "must first review, as a matter of law, the correctness of the district court's setting aside any factual findings by the master and, if that is upheld, review any substitute or additional findings of the district court under the 'clearly erroneous' standard of Rule 52(a)." *Id.* at 593 (footnote omitted); *see also Hines v. Secretary of the Dep't of Health & Human Servs.,* 940 F.2d 1518, 1524 (Fed.Cir.1991); *Martin v. University of S. Ala.,* 911 F.2d 604, 608 (11th Cir.1990).

10. As the district court acknowledged, the special master "facilitated" the settlement by supervising the settlement conferences. Mem.Op. & Order at 3, Appellants' J.A. at 1507; *see also* Order Preliminarily Approving Proposed Settlement at 3–4, Appellants' J.A. at 196–97. Further, the special master reviewed the fee applications and heard testimony from various individuals concerning the effectiveness and efforts of class counsel. Thus, it is clear that the special master's knowledge of issues surrounding the fee applications was direct and extensive.

and is reasonable in this case. *See, e.g., Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d at 849, 853–54 (10th Cir.1993); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 & n. 2 (10th Cir.1988); 1 Alba Conte, *Attorney Fee Awards*, §§ 2.08, 2.32 Chart (2d. ed. 1993 & Supp.1994); Lapointe, *supra*, at 868 n. 170; *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993) (holding that twenty-five percent of the common fund is the "benchmark" award which can be adjusted, or replaced by the lodestar calculation, in "special circumstances"), *cert. denied sub nom. Reilly v. Tucson Elec. Power Co.*, — U.S. ——, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994).

### B. Class Counsel Appellants

■ The district court also held that all class counsel except H & R should be compensated at their lodestar rate only—*i.e.*, without any enhancement or multiplier. The court based this conclusion on its own factual finding that all such counsel "are considered as lawyers contracting for particular assignments." Mem Op. & Order at 15, Appellants' J.A. at 1519. We review this factual finding by the district court for clear error.

We hold that the district court clearly erred in concluding that all class counsel except H & R are "contract" lawyers, susceptible to different treatment from H & R. The orders appointing H & R and the Class Counsel Appellants as counsel for the class made no such distinction between them. *See* Orders Designating Additional Counsel, Appellants' J.A. at 103–04, 104A. All class counsel were equally at risk of nonpayment if they lost the case. Robert Hill has given no indication that he viewed other class counsel as mere "contract" lawyers. *See* Hill Affidavit, Appellants' J.A. at 399–440.[11] The special master made no findings relating to any different status or conduct by various class counsel, nor did the district court point to any evidence in the record supporting such a

distinction. We therefore reject as clear error the award of a lower fee based upon such a distinction, and on remand all class counsel shall share the class counsel fee award, without any such distinction, except that the district court is free to make some reasonable allowance to H & R for its undertaking responsibility to act as lead counsel. We leave to the district court on remand to determine how the fee will be allocated among class counsel.[12]

### C. Non–Designated Counsel Appellants

■ The district court denied any fee award to Non–Designated Counsel Appellants, holding that their efforts did not contribute to the creation of the fund and that their failure to be designated as class counsel deprived them of any right to fees from the common fund. The special master had found that non-class counsel's work was "clearly duplicative" of class counsel's work, but nonetheless recommended an award of ten percent of the total fee award because such duplication was unavoidable and because there was utility in encouraging counsel to bring lawsuits to enforce the securities laws. Thus, we review several factual findings by the master and district court—that Non–Designated Counsel's work was duplicative of class counsel's work, and that Non–Designated Counsel's work did not contribute to the creation of the settlement fund. We review these findings for clear error. We also review the district court's legal conclusion that those who "fail to find favor" with the district court and are not selected as class counsel thereby lose their entitlement to attorneys' fees.

The record refutes the factual finding that Non–Designated Counsel conferred no benefit on the class. As Non–Designated Counsel argue, numerous actions were initially filed, and counsel vigorously pursued those cases for sixteen months before class counsel was designated. At one point, the district court

---

**11.** Indeed, in his affidavit, Mr. Hill described class counsel as a "team," and stated that the "contribution of [other class counsel] in helping make the Class' case was significant." Hill Affidavit at 9, 10, Appellants' J.A. at 407, 408.

**12.** We direct reinstatement of the special master's award of $8,910,000 to all class counsel. Although H & R did not appeal the amount the district court awarded it, we leave the court free on remand to award H & R a greater amount if the rationale upon which it allocates the $8,910,-000 among class counsel produces that result.

explicitly directed counsel to coordinate their efforts, apparently permitting the use of the courtroom to do so. The record indicates that Non–Designated Counsel did indeed actively prosecute the case prior to court designation of class counsel. *See, e.g.,* Appellants' J.A. at 242–68, 521–26, 620–24, 962–65, 987–88.

Mr. Hill recognized Non–Designated Counsel's contributions when he was designated class counsel. At that time, he sent a letter to all plaintiffs' counsel, stating, "it appears that some of you may have done work on this case that would be of benefit to the class," and soliciting submissions of any such work products. Appellants' J.A. at 494. Mr. Hill has never suggested to this court that, based on his familiarity with this case, he believed that Non–Designated Counsel conferred no benefit on the class.

Moreover, it seems implausible that all of sixteen months of work, pursued on multiple fronts by multiple counsel, suddenly becomes worthless upon the selection of a few counsel to serve as class counsel. We are thus disinclined to accept the special master's and the district court's conclusory statements, made without supporting specifics, that Non–Designated Counsel's work completely duplicated that of Class Counsel. And while there obviously was some duplication in the work of all counsel simultaneously pursuing many actions, we fail to see why the work of counsel later designated as class counsel should be fully compensated, while the work of counsel who were not later designated class counsel, but on whose shoulders class counsel admittedly stood, should be wholly uncompensated.

The district court supported its refusal to award any fees to Non–Designated Counsel with the observation that law firms engage in "entrepreneurial" efforts when they file securities actions following the collapse of corpo-

rations whose stocks are widely traded, and if they "fail to find favor from the court" by not being selected as class counsel, they should expect no fee. We disagree with that broad statement. The motivations of the lawyers filing such actions are irrelevant to the value, if any, of their services. Whether motivated by altruism, greed, or entrepreneurial zeal, the quality of the attorneys' legal services should be objectively ascertainable. If they have indeed conferred a benefit on the class, as here, they should receive some compensation.

We therefore reverse the district court's conclusion that Non–Designated Counsel Appellants should receive no fees, and we remand with instructions to award such fees in accordance with the special master's report. That report divided ten percent of the total fee among the non-designated counsel, awarding a specified amount to each.[13]

### D. *Objector–Appellants*

The Welches generally challenge the fee award to class counsel, and they argue the court erred in failing to appoint a guardian *ad litem* to protect the interests of the class in the fee award proceedings. The Welches' counsel also argue that the district court erred in denying them the opportunity to apply for a fee award, and in rejecting the special master's recommendation to award them some fees.

### i. *Objections to Class Counsel's Fee Award*

We have effectively mooted many of the Welches' specific arguments concerning the district court's calculation of Class Counsel's fee award by reversing the district court's decision on this matter and holding that the percentage of the fund selected by the special master provides a reasonable fee.[14]

---

**13.** It appears that two of the non-designated counsel firms did not appeal the district court's determination that they should receive no fee award. Although we have discussed non-designated counsel as a group, we nonetheless have individually assessed the benefit each conferred on the class. Any firms not appealing have obviously not created any record from which we can determine whether the district court's denial of a fee award was clear error or not. Accordingly, on remand any such firm may not receive an

award in accordance with the special master's report.

**14.** Class Counsel assert that the Welches, as unnamed class members, lack standing to challenge the fee award under our opinion in *Gottlieb v. Wiles,* 11 F.3d 1004 (10th Cir.1993). Even if true, we would address the merits of the Welches' arguments concerning fees, for the same prudential reasons we addressed the merits of their arguments in *Gottlieb. See supra,* note 2.

One argument we must still address is the Welches' claim that no interest should be paid on the fee awards, or, if interest is paid, that it should not exceed that paid on the settlement fund itself. The district court awarded interest on fee payments to "accrue at the current statutory rate of 3.54% compounded annually." Mem.Op. & Order at 19, Appellants' J.A. at 1523. The Welches essentially seek the reinstatement of the special master's interest calculation, for he awarded each fee applicant "a portion of the interest on any settlement funds on deposit, as determined by multiplying the appropriate percentage [of the total fee award] for said applicant times 22.5% of the total amount of interest earned." Report at 32, Appellants' J.A. at 1488. We agree that such an award of interest is appropriate in this case, and direct interest to be calculated on that basis.[15]

### ii. *Guardian Ad Litem*

The Welches filed a motion for the appointment of a guardian *ad litem* to protect the interests of the class in the fee award process. The district court denied the motion, and the Welches now argue that denial was wrong.

The rationale for appointing a guardian *ad litem* in the fee award proceeding following the settlement of a case like this is that the guardian fulfills the advocate's role abandoned by the defendant:

Having agreed to contribute a fixed sum of money in settlement of the suit, the proportion of the fund allocated to counsel fees is of no moment to the defendants. Consequently, defendants do not participate in the fee determination proceedings. The unfortunate result is the necessity for the judge to assume the advocate's role left unfulfilled by the defendants' departure. The dilemma thereby created for the Court finds the judge playing "devil's advocate" on behalf of the disinterested defendants, while at the same time attempting to exercise his impartiality in making a just determination of reasonable fees.

*Haas v. Pittsburgh Nat'l Bank*, 77 F.R.D. 382, 383 (W.D.Pa.1977). While the need may indeed be compelling in some cases, we find few cases in which courts actually use guardians *ad litem*. *See* Lu, *supra*, at 64 ("A survey of reported cases reveals that there are few examples of judges appointing a class guardian in a fees dispute.").

In this circuit, we have observed that "[t]he trial judge in a common fund case must 'act as a fiduciary for the beneficiaries' of the fund." *Brown*, 838 F.2d at 456 (quoting Report of the Third Circuit Task Force, *Court Awarded Attorneys Fees*, 108 F.R.D. 237, 251 (1985)); *see also Uselton*, 9 F.3d at 854. There is no indication that the district court failed to act in that capacity in the fee proceedings in this case. Moreover, the district court initially referred the fee applications to a special master, an impartial observer who himself could insure that the class' interests were protected.

Though the importance of safeguarding the class' interests cannot be underestimated, the Federal Judicial Center report [on attorney's fees in class actions] rightly questions whether such a function could be performed equally well by masters or magistrates. It is up to the individual judge's preference as to whether he uses a disinterested observer (e.g., magistrate or master) or an interested advocate (e.g., guardian).

Lu, *supra*, at 66; *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (observing that appointment of a special master in fee proceeding is "especially appropriate in a case such as this that lacks an adversary setting").

We find no error in the district court's refusal to appoint a guardian ad litem.

### iii. *Denial of Opportunity to Make Fee Application and Denial of Fees*

The Welches' attorneys argue that the district court erred in not awarding them

---

15. Our agreement with the Welches on this point should not be interpreted as an indication that we feel their argument on this matter has contributed to our decision in this appeal, such that a further fee is justified. Our general reinstatement of the special master's award would have included such an award of interest.

any fees, and in refusing to permit them to make a fee application following the special master's recommendation that they receive some fee award. The special master recommended such an award because he found their arguments challenging the fee applications of various counsel were presented "cogently and competently," and that some of their arguments "resulted in reductions in the fees and expenses awarded to several of the applicants." Report at 31, Appellants' J.A. at 1487. Although the district court held that no factual finding of the special master was clearly erroneous, it implicitly rejected the master's findings concerning the effect of the Welches' counsel's arguments, concluding that "[t]he legal arguments presented by objectors did not contribute to maintenance of the fund." Mem.Op. & Order at 17, Appellants' J.A. at 1521.

The district court failed to articulate why the special master's findings concerning the effect of the Welches' counsel's arguments were clearly erroneous. Further, the record supports the master's conclusion that those arguments did in fact result in a reduction of certain fee and expense awards, and thereby benefitted the class. We therefore reverse the district court's refusal to award any fees to the Welches' counsel, and we remand for entry of an amount awarded by the special master. In view of this decision, we need not address the propriety of the district court's refusal to permit the Welches' counsel to file a fee application.[16]

## CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and REMAND for further proceedings consistent herewith.

---

**16.** Class Counsel Appellants argue that the Settlement Notice sent to all class members specifically stated that "[a]ny member of the Class may appear at the hearing [on the settlement], *at his or her own expense,* to express approval of or objection to ... the issues." Notice, Appellants' J.A. at 1521 (emphasis added) (alteration in original). Class Counsel Appellants assert that the emphasized language prohibits any fee award to counsel for the Objector–Appellants. We agree with the Welches' counsel that the notice's language simply warns objectors that their routine expenses occasioned by their appearance at the hearing will not be reimbursed, but does not override the established law that objectors who do indeed confer a benefit upon the fund may be compensated for that benefit.