**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 26, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

CHIEFTAIN ROYALTY COMPANY, on
its behalf and as representative of a class of
similarly situated royalty owners,

     Plaintiff - Appellee,

v.

ENERVEST ENERGY INSTITUTIONAL
FUND XIII-A, L.P.; ENERVEST
ENERGY INSTITUTIONAL FUND XIII-
WIB, L.P.; ENERVEST ENERGY
INSTITUTIONAL FUND XIII-WIC, L.P.;
ENERVEST OPERATING, LLC;
FOURPOINT ENERGY, LLC,

     Defendants - Appellees.

------------------------------

DANNY GEORGE,

     Objector - Appellant,

and

C. BENJAMIN NUTLEY, as personal
representative of the Estate of Charles
David Nutley,

     Objector - Appellant.

Nos. 24-6227 and 24-6228

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:11-CV-00177-D)**

_____

John J. Pentz, Oro Valley, Arizona, for Objector-Appellant Danny George.

Eric Alan Isaacson, Law Office of Eric Alan Isaacson, La Jolla, California (John W. Davis, Tampa, Florida, and C. Benjamin Nutley, Kamuela, Hawaii, with him on the briefs) for Objector-Appellant C. Benjamin Nutley.

Bradley E. Beckworth (Jeffrey J. Angelovich, Susan Whatley, Cody L. Hill, and Nathan B. Hall, with him on the brief), Nix Patterson, LLP, Austin, Texas, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, **KELLY**, and **BACHARACH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Over sixteen years ago, Chieftain Royalty Co. sued EnerVest Energy's predecessor in interest for allegedly underpaying royalties on oil-and-gas wells in Oklahoma. Though the parties settled in 2015, the case has continued over the evergreen issue of attorneys' fees. After two previous appeals and the subsequent award of attorneys' fees to plaintiffs, two class members argue the award is excessive in violation of Oklahoma law.

Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** the district court's attorneys' fees order. Oklahoma law requires attorneys' fees be reasonable under the circumstances of the case, a standard which the district court correctly applied and thoroughly analyzed. We find no error and hold the court's order falls within its discretion.

2

# I.    Background

Chieftain Royalty represents a certified class of oil-and-gas royalties owners in Oklahoma.  In 2011, Chieftain sued EnerVest Energy's predecessor in interest, SM Energy, for allegedly underpaying royalties on wells it operated or marketed.  EnerVest acquired the wells in 2014 and settled with Chieftain a year later, agreeing to a cash payment of $52 million which would be distributed to the class members after payment of expenses and fees.  *Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII-A, L.P.* (*Chieftain I*), 888 F.3d 455, 458 (10th Cir. 2017).

Soon after, class counsel moved for final approval of the settlement.  It also moved for attorneys' fees equaling 40% of the settlement fund, reimbursement for litigation expenses, and an incentive award of 1% of the settlement amount for the class representative.  Two class members, Charles David Nutley[1] and Danny George, objected.[2]  The district court held a fairness hearing in November 2015 and subsequently approved the settlement.  Applying federal common law, it awarded 33.33% of the fund ($17,333,333.33) to class counsel as attorneys' fees and 0.5% ($260,000) of the fund to the class representative as an incentive award.  App. 129–38.

---

[1] Charles Nutley passed away during the case and his interest passed to his estate.  The estate continues to press his claim through its personal representative, C. Benjamin Nutley.

[2] For convenience, we typically refer to George and the Nutley Estate collectively as "the Objectors."

The Objectors appealed and we affirmed the settlement. But we reversed the attorneys' fees and incentive awards. *Chieftain I*, 888 F.3d at 470. We held that state law, rather than federal common law, governed the availability and calculation of both attorneys' fees and incentives. And since we interpreted Oklahoma caselaw as prohibiting a percentage-of-the-fund award and requiring a lodestar analysis instead, we reversed the attorneys' fees award. *Id.* at 463–64 (citing *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okla. 1979)). We also questioned the availability of any attorneys' fees award because class counsel, anticipating the availability of a percentage-of-the-fund award, had not kept the detailed billing records necessary for a lodestar calculation. *Id.* at 464. We then made an *Erie* guess that Oklahoma would require courts to calculate an incentive award by accounting for the reasonable time a class representative spends on services helpful to the litigation. *Id.* at 469. Because the district court made its incentive award based on a percentage-of-the-fund, we reversed it as well. *Id.*

On remand, class counsel filed separate motions for attorneys' fees of $17,333,333.33 (33% of the fund) and an incentive award of $260,000.00 (0.5% of the fund). Responding to our concerns about its lax billing records, class counsel submitted reconstructed timesheets, affidavits, and expert reports to support its fee request. It also produced records detailing the class representative's contributions to the case. Once again, Nutley and George objected.

Before the district court ruled on the motions, the Oklahoma Supreme Court clarified Oklahoma's standards for attorneys' fees and incentive awards in *Strack v.*

4

*Continental Resources, Inc.*, 507 P.3d 609 (Okla. 2021). *Strack* held that either a percentage-of-the-fund *or* lodestar analysis could satisfy Oklahoma's class action attorneys' fees statute, so long as the ultimate award is reasonable. But the court explained that lower courts should only calculate an incentive award based on an analysis of the time a class representative spent on services helpful to the litigation.

The district court applied *Strack* and granted both motions. First, it reviewed the Oklahoma class action statute's thirteen factors and concluded that 33.33% of the fund was a reasonable attorneys' fees award under the circumstances. The court then conducted a lodestar cross-check and determined an award equivalent to its percentage-of-the-fund method would require a 2.15 lodestar multiplier. After going through the statutory factors again, the court decided a 2.15 multiplier was reasonable. Turning to the incentive award, the court held $232,440 was reasonable based on the time the class representative worked on the case and his average hourly rate from five similar class actions where he served as the representative.

The Objectors appealed again. We affirmed the incentive award but vacated the attorneys' fees award because class counsel should have notified the class of its intent to move for attorneys' fees after *Chieftain I*'s remand. *Chieftain Royalty Co. v. SM Energy Co.* (*Chieftain II*), 100 F.4th 1147, 1150 (10th Cir. 2024). Having reversed on that procedural ground, we did not reach the merits of the fee award. *Id.* at 1151.

Back in the district court, class counsel gave new notice to the class and renewed its motion for attorneys' fees. The Objectors once again challenged the

5

sufficiency of the notice and the reasonableness of the fee award.  The district court

rejected the Objectors' notice argument, finding class counsel had met all notice

requirements.  Then, it refused to revisit its 2022 Fee Order because that order had

addressed this court's concerns from *Chieftain I*, considered and applied *Strack*, there

were no new objectors, and all interested parties had received a fair opportunity to

brief objections to the award's reasonableness.  Finding no reason to delay the

already protracted litigation, the court reinstituted its award of $17,333,333.33 on the

grounds explained in the 2022 Fee Order.

The Objectors now appeal for a third time to challenge the reasonableness of

the attorneys' fees award.

## II.    Discussion

The Objectors argue that the district court's attorneys' fees award is

unreasonable because it does not follow the standards laid out in *Strack*.  They

contend *Strack* imposed an upper ceiling on awards that the district court exceeded.

Alternatively, they contend the district court's lodestar cross-check understated the

necessary multiplier because it inflated the base lodestar by wrongly including time

class counsel spent defending its fees award.  So even if the district court's

"understated" lodestar multiplier was reasonable, they argue the "true" multiplier is

much higher and vastly exceeds what *Strack* allows.  Finally, the Objectors claim the

court made legal and factual errors when analyzing Oklahoma's statutory factors that

led it to determine, incorrectly, that a lodestar enhancement was justified.  We

disagree and, finding no errors, affirm the court's award.

### A.    Standard of Review

"We review a district court's attorneys' fees award for abuse of discretion." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1126 (10th Cir. 2016) (quoting *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184 (10th Cir. 2011)). Accordingly, we review the court's application of legal principles de novo and its factual findings for clear error. *Id.* The abuse-of-discretion standard is deferential, and we will not disturb the trial court's decision unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 96 F.2d 1539, 1553–54 (10th Cir. 1991)).

### B.    Reasonableness of the District Court's Award

#### 1.    Oklahoma's Attorneys' Fees Standard

When a federal court tries a class action based on diversity jurisdiction, its award of attorneys' fees is governed by state law. *Chieftain I*, 888 F.3d at 462. *Strack v. Continental Resources, Inc.*, 507 P.3d 609 (Okla. 2021), is the Oklahoma Supreme Court's most recent articulation of the state's attorneys' fees law. There, the court explained that "Oklahoma's class action statutory scheme gives courts a liberal framework in calculating and awarding fees, mandating that the award be reasonable." *Id.* at 614. *Strack* interpreted Oklahoma's attorneys' fees statute as allowing courts to use either a percentage-of-the-fund or lodestar approach. *Id.* at 615–16 (citing Okla. Stat. tit. 12, §§ 2023(G)(1), 2023(G)(4)(e)). The court clarified that "[t]he goal of every attorney fee case is not to select a methodology but to arrive

at a reasonable fee." *Id.* at 616. So rather than endorsing one method over the other, it instructed trial courts to select the "methodology [that] best arrives at a reasonable award given the circumstances of the particular case." *Id.* at 616 (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). The court recognized that each method has pitfalls, and it directed trial courts to "compare the results of both methods" to ensure reasonable awards. *Id.* at 616–17. So once the court makes its initial award calculation, it must then cross-check the award's reasonableness against the result of the alternate method.

A percentage award grants attorneys' fees from the prevailing party's payout, often according to the terms of a contingent fee arrangement. *Id.* at 614. Typically, parties in Oklahoma may negotiate a contingent fee with their counsel. *Id.* at 615. But in a common fund class action the trial court must scrutinize such an agreement and ensure the fees are reasonable. *Id.* *Strack* gave two reasons for this requirement. First, class counsel and the class representative are "obligated to act in the best interests of the silent class members when entering into [a contingency fee arrangement]." *Id.* The court's independent inquiry into the fee agreement provides a backstop to those entities' fiduciary duties to the class. Second, class action lawsuits benefit from economies of scale that often produce larger common funds compared to individually litigated suits. Thus, courts "frequently reduce the percentage [award]" in class actions below what they would grant in individual litigation. *Id.* at 617. The court explained a "20% to 30%" award was the average range for class actions but acknowledged deviations were sometimes appropriate,

8

"for example . . . when the fund is extraordinarily large or small relative to the hours of work expended by the attorneys." *Id.*

The lodestar method requires courts to "1) determine the compensation based on the hours spent multiplied by an hourly rate, and 2) enhance or decrease the fee through the statutory factors in [Okla. Stat. tit. 12, § 2023(G)(4)(e)]." *Id.* at 614. Oklahoma has "a strong presumption that the lodestar method alone" will produce a reasonable fee. *Id.* at 619 (citing *Parsons v. Volkswagen of Am., Inc.*, 341 P.3d 662, 671 (Okla. 2014)). And while "[a] multiplier may increase or decrease a lodestar calculation," the court acknowledged it "rarely permit[s] a multiplier above 1.5." *Id.*

No matter which methodology the trial court employs, it must assess the award's reasonableness by weighing § 2023(G)(4)(e)'s thirteen factors. *Id.* at 616. That statute adopts the twelve federal common law factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and adds one more—the risk of recovery in the litigation.[3] *See* Okla. Stat. tit. 12, § 2023(G)(4)(e). Merely

---

[3] The factors are:

> (1) time and labor required, (2) the novelty and difficulty of the questions presented in litigation, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorney, (10) whether or not the case is an undesirable case, (11) the nature and length of the professional relationship with

9

mentioning the factors is not enough. *Strack*, 507 P.3d at 619 (citing *Spencer v. Okla. Gas & Elec. Co.*, 171 P.3d 890, 896 (Okla. 2007)). The trial court "must examine the evidentiary support for these factors beyond a cursory glance." *Id.*

As *Strack* reiterated, the touchstone for attorneys' fees awards is reasonableness. *Id.* at 618. And "the reasonableness of attorney's fees . . . depends on the facts and circumstances of each case and is a question for the trier of fact." *Id.* at 614. That standard requires "inquiring into a rational relationship between the fee and the recovery." *Id.* at 618 (citing *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., statement concerning denial of certiorari)).

In short, while courts must take *Strack*'s percentage and lodestar multiplier guidelines seriously, we do not understand those ranges as set in stone. An award that is reasonable under the circumstances is one carefully tailored to the characteristics of the case rather than the product of an off-the-rack statistical analysis. *See id.* at 619 (describing how the analysis of the statutory factors will "differ in each case"). The trial court has a responsibility to apply the statutory factors fully. And if the court deviates from *Strack*'s presumptive ranges, its departure must be based on the factors and supported with evidence.

---

the client, (12) awards in similar cases, and (13) the risk of recovery in the litigation.

Okla. Stat. tit. 12, § 2023(G)(4)(e).

10

### 2.    *Reasonableness of the Percentage Award*

The Objectors argue that the district court's attorneys' fees award violates *Strack*'s guidelines and was, therefore, an abuse of discretion.  Their main argument is that *Strack* set a soft ceiling on what counts as a reasonable fee—30% of the common fund under the percentage method and a multiplier of 1.5 in a lodestar calculation—which the district court breached without justification.  And, they contend, even if *Strack*'s limits are flexible, the facts in *Strack* and this case are too similar to warrant any deviation.  We disagree.  The district court assessed the reasonableness of its 33.33% award based on Oklahoma's statutory factors.  It was mindful of *Strack*'s requirements and, recognizing the similarities between the two cases, carefully articulated the distinguishing grounds supporting its award.

Rather than simply approving class counsel's initial request for 40% of the fund, the district court applied Oklahoma's statutory factors and determined that 33.33% was a reasonable award.  While the court recognized its award was slightly above *Strack*'s average range, it decided the facts of the case warranted the deviation.  App. 680.  Importantly, the district court determined that eleven of the thirteen statutory factors supported a fee enhancement.  And it highlighted class counsel's "nearly complete success" in certifying the class and securing a settlement of roughly the entire claimed underpayment principal as strongly supporting its award.  App. 679.  It also identified the high risk of non-recovery in the litigation based on the "complexity of the factual and legal issues, the difficulty of obtaining classwide relief for royalty owners claiming under diverse leases, the unsettled nature of

11

substantive law on [relevant] issues . . . and the mercurial nature of the oil and gas industry." App. 679–80. A key additional factor in the complexity analysis was the district court's judgment that "controlling law regarding class certification was in flux" when Chieftain's counsel moved to certify. App. 679 n.10. Navigating the changing legal landscape required great skill, as evidenced by class counsel's success at a time when many other royalty underpayment classes were not certified by federal district courts in Oklahoma. App. 679 n.10 (collecting cases).

Contrast those findings with *Strack*. For one, while the common funds in the two cases are similar—$49.8 million in *Strack* and $52 million in *Chieftain*—the pre-fee recovery for each class member in *Chieftain* is $600 greater than that in *Strack*. While not definitive, the greater per member recovery supports an inference of greater success by Chieftain's counsel. We would need more information about the *Strack* settlement to make a definitive judgment of the relative success of the cases. But the district court grounded its finding of Chieftain's counsel's success on a legitimate basis that it supported with evidence. App. 679 n.9 (discussing expert testimony that supports its finding that the settlement equaled 100% of the claimed underpayment principal). And given the meaningful difference in the per capita recovery amounts between the cases, the Objectors are wrong to say *Strack* precludes the court's finding that counsel achieved excellent results for the class here.

As we mentioned, the district court also identified the great skill class counsel displayed by securing certification of the class. The comparison is not one-to-one since *Strack* was litigated in Oklahoma state court. But the Objectors have not

12

contested the district court's finding that federal law on class certification was in flux or introduced evidence that certification in Oklahoma posed similar challenges. Given the importance of certification to class action litigation, the district court was within its discretion when it considered the issue in its assessment of class counsel's skill and the case's difficulty. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 904 F.3d 1135, 1140 (10th Cir. 2018) ("A grant or denial of class certification can make or break the litigation." (citation modified)). Class counsel's success in this area where Strack's counsel failed is, therefore, another important distinction for the reasonableness assessment.

Alternatively, the Objectors argue a trial court may only deviate from the 20% to 30% average range for class action awards when the common fund is "extraordinarily large or small relative to the hours of work expended by the attorneys." Nutley's Opening Br. 29–30 (citing *Strack*, 507 P.3d at 617). Based on *Strack*'s discussion of the average range, the Objectors contend the district court should have recognized that the $52 million common fund was not sufficiently out of proportion with the amount of legal work to justify an upward deviation. In fact, they say, the fund was large enough to warrant a fee at the low end of the range. Their key point is that a 20% award, at the lower end of *Strack*'s reported average, would still produce a "generous [lodestar] multiplier of 1.3." *Id.* at 31.

We disagree with this reading of *Strack*. While *Strack* articulated a statistical average range of fee awards for complex class actions, it left trial courts with discretion to assess the reasonableness of an award based on the facts. 507 P.3d at

13

614. *Strack* tells us the method for making that assessment is through analyzing the statutory factors. *Id.* at 616 ("[Section 2023(G)(4)(e)] sets out factors that a court **shall** consider to assess the reasonableness of attorney's fees.")  So if a court decides to deviate from the average award range, that decision must be justified by the factors. *See id.*  Indeed, *Strack*'s explanation that deviations are sometimes justified by the relationship between a fund's size and the hours worked is an articulation of the interplay between two factors—"[the] time and labor required" and "[the] amount in controversy and the results obtained."  Okla. Stat. tit. 12, § 2023(G)(4)(e)(1), (8). *Strack* suggested that this relationship was one example of a circumstance when courts deviate from the average range.  507 P.3d at 617 ("*For example*, the attorney's fees awarded in complex class actions are *normally* 20% to 30% of the recovered fund, with deviations from that range when the fund is extraordinarily large or small relative to the hours of work expended by the attorneys." (emphases added)).  Since the Oklahoma Supreme Court was clear that all the statutory factors apply, we will not adopt the Objectors' narrow reading of *Strack*, which would convert an example into a restrictive command.

Furthermore, the district court's break with *Strack*'s average upper-range of 30% was not extreme—only 3.33% compared to the *Strack*-plaintiffs' proposed upward deviation of 10% from 30%.  *Strack*'s clear holding is that an award of 40% of the fund, under the circumstances, was excessive compared to the average range of 20%–30%.  *Id.*  But it did not say a 40% award is always unreasonable.  Assuming, merely for the sake of argument, that *Strack* did hold that a 40% award is per se

14

unreasonable, that still tells us nothing about the reasonableness of a 33.33% award in the abstract.  In other words, a holding that exceeding the average by 10% is unreasonable is not a holding that exceeding the average by 3.33% is as well.  So if we were to accept the Objectors' contention that the cases are substantially similar, we still would not agree that *Strack* requires us to find an abuse of discretion here. Of course, the factual distinctions we discussed place the district court's award on even firmer footing, and exceeding *Strack*'s statistical average by 3.33% was reasonable under the circumstances.

We conclude that *Strack* does not impose a hard ceiling of 30% on fee awards and instead allows deviations from the statistical 20%–30% range when warranted by the statutory factors.  Despite the Objectors' attempt to portray this case as indistinguishable from *Strack*, the district court identified differences based on those factors.

Thus, the district court was within its discretion when it determined a 33.33% award was reasonable under the circumstances.

### 3.    *The Lodestar Cross-Check*

The Objectors argue next that the district court's award is unreasonable based on *Strack*'s lodestar cross-check requirements.  They contend that even if an award above 30% of the fund is allowable in some cases, the calculated lodestar multiplier of 2.15 establishes such an award is unwarranted in this case.  And they allege errors in the lodestar calculation that they believe produced a significantly understated lodestar multiplier.  So even if a 2.15 multiplier were reasonable, the Objectors assert

15

that the "true" multiplier exceeds 3.0 and is excessive. We disagree because we find the district court conducted a proper lodestar cross-check and did not abuse its discretion in deciding a 2.15 multiplier was supported by Oklahoma's statutory factors.

The purpose of a lodestar cross-check is to ensure that a percentage award is not a windfall. William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 15:85 (6th ed. 2025). Courts accomplish the cross-check by calculating the counsel's lodestar—the amount it would be paid for work by the hour—and comparing that value to the percentage award. *Id.* § 15:87. The result is a number reflecting the percentage award's positive or negative multiple of the lodestar. *Id.* The court then assesses the reasonableness of the award which, in Oklahoma, means evaluating the multiplier against the statutory factors. *See Strack*, 507 P.3d at 619.

The Objectors attack the district court's lodestar cross-check on four fronts. *First*, they argue the district court's calculated lodestar multiplier of 2.15 unjustifiably exceeds *Strack*'s suggested limit of 1.5. Though the Objectors concede that *Strack* did not set a hard upper limit on lodestar multipliers, they believe this case and *Strack* are so similar that the 1.5 guideline should control. George's Opening Br. 25. We disagree for the same reasons explained in our discussion of the reasonableness of the percentage award above. As the Objectors acknowledge, the reasonableness of a lodestar multiplier depends on the circumstances of the individual case. Nutley's Opening Br. 15–16. The district court applied the statutory factors and determined 2.15 was a reasonable multiplier. It was aware of *Strack* and,

16

while acknowledging that case's similarities to this one, it identified important distinctions between them. As we noted above, the court properly considered class counsel's success in certifying the class, recognized that counsel recovered 100% of the underpayment principal, and noted the greater pre-fee recovery per class member that counsel secured compared to Strack's counsel. Furthermore, *Strack* decided a multiplier of 3.17 was an abuse of discretion based on the facts of that case and the district court's deficient analysis of the statutory factors. 507 P.3d at 619–20. Whereas here the district court awarded a more modest 2.15 multiplier, fully analyzed all thirteen factors, and discussed supporting evidence for its determinations on each. App. 26–32.

*Second*, the Objectors contend that the district court merely reverse engineered the 2.15 lodestar multiplier to match its percentage fee award. But that allegation misunderstands how a lodestar cross-check works. Above, we discussed the cross-check process of calculating counsel's base lodestar, comparing it to the proposed percentage award to generate the necessary multiplier, and then assessing the multiplier's reasonableness. That's exactly what the district court did. The court applied the statutory factors and determined that a 33.33% award was reasonable—that percentage of the fund equaled $17,333,333. Then the court scrutinized class counsel's reconstructed timesheets and proposed hourly rates to compute a base lodestar of $8,044,667.75. Finally, it compared the two award numbers to produce a multiplier of 2.15, which it subjected to another review against the statutory factors. After finding the multiplier reasonable, it went ahead with the award.

17

The Objectors suggest this process amounts to reverse engineering because *Strack* criticized the lower court for adopting a lodestar multiplier that simply reproduced its previously invalidated percentage fee award. Nutley's Opening Br. 35 (citing *Strack*, 507 P.3d at 620 ("We conclude the district court used a 317% enhancement multiplier to the lodestar calculation based on nothing more than an attempt to equate it to 40% of the common fund.")). But that misunderstands the criticism. The *Strack*-court faulted the district court's application of a 3.17 lodestar multiplier because it was not supported by the evidence. 507 P.3d at 620. The district court disregarded many of the statutory factors and conducted a "cursory" examination of the few that it did. *Id.* at 619. Thus, the court abused its discretion by basing the 3.17 multiplier *solely* on the ground that it equaled the 40% award. *Id.* at 620 ("The district court abused its discretion by awarding a 3.17 multiplier enhancement—a 317% increase—to the lodestar calculation *without evidence* and supported by only a conclusory statement." (emphasis added)).

That problem is absent from this case. The district court conducted a proper lodestar cross-check that identified the necessary lodestar multiplier to equal its percentage fee award. Crucially, it then evaluated the reasonableness of the multiplier against each of the statutory factors and identified relevant record evidence supporting its findings. So the district court's evaluation of the multiplier was based on more than its mathematical relationship to the percentage award. That is what *Strack* requires.

There is another, more fundamental problem with the Objectors'
reverse-engineering argument.  If the Objectors are right that equivalence between
the percentage and lodestar awards constitutes prohibited reverse engineering,
*Strack*'s core holding would fall apart.  *Strack*'s foundational issue was whether
Oklahoma law allows percentage-of-the-fund awards in common fund class action
cases.  *Id.* at 614.  The court answered "yes," but it also required trial courts to
compare the results of both methods.  *Id.* at 617.  If a lodestar multiplier that
reproduces the percentage award is always an unlawful reverse engineering, then
*Strack* requires an independent, blank-slate lodestar analysis rather than a lodestar
cross-check.[4]  And if the result of the lodestar analysis is *the* presumptively
reasonable award, and a multiplier that equals the percentage award is reverse
engineering, the trial court must either adopt the lodestar result or choose a multiplier
that comes close to the percentage award without mirroring it.  Whatever award is

---

[4] We question whether a court could conduct a blank-slate analysis when it is
already aware of the value of the assessed and selected percentage award.  Even
acting in the best faith, a court cannot wipe its prior analysis and award from
memory.  Once it calculates the base lodestar, the percent-award figure will lurk in
the back of its mind as it conducts an "independent" analysis to select a reasonable
lodestar multiplier; one that does not mirror the comparator that it must pretend to
know nothing about in the first place.

But we think the lodestar cross-check methodology accounts for that concern
by allowing the court to transparently calculate the necessary multiplier and then ask
the question, "is this reasonable?"  *See* Rubenstein, *supra*, § 15:87 (describing the
cross-check method as calculating the necessary multiplier to equal the percent award
and then "assess[ing] whether that multiplier is reasonable in the context of the
particular case").

allowed, one equivalent to the percentage award would always be prohibited. That makes no sense and cannot be what *Strack* meant.

Furthermore, *Strack* is distinguishable because, here, the district court stated it was doing a lodestar cross-check and then completed the necessary analysis. The lower court in *Strack* did not claim it was conducting a cross-check. Instead, it consciously awarded attorneys' fees of 40% of the fund pursuant to the fee arrangement. *Id.* at 613. And since the parties disagreed over whether Oklahoma law allowed a percentage-of-the-fund award, the district court sought to backstop its award by adopting class counsels' argument that the lodestar methodology would lead to the same result. *Id.* To reproduce the 40% award, the district court applied a 3.17 lodestar multiplier. *Id.* But, as discussed above, the court did not support the reasonableness of the multiplier with evidence. Insofar as the court's process resembles a lodestar cross-check, the similarities end when the court failed to conduct the required reasonableness analysis.

*Third*, the Objectors argue the district court's base lodestar calculation was wrongly inflated by including time class counsel spent on appeals to defend its fee award. Specifically, Nutley acknowledges that Oklahoma law allows attorneys to include reasonable time spent on the application for and successful defense of their fees. But he contends those efforts are reasonable only if they help conclude the case and contribute to establishing the recovery. Nutley argues class counsel's challenges to this court's ruling in *Chieftain I* through petitions for rehearing, en banc rehearing, and certiorari to the Supreme Court had little chance of success, were ultimately

unsuccessful, had no bearing on the class's interest in the settlement, and prolonged the litigation needlessly. So he concludes those strategies were not reasonable, and time spent on them cannot be included in the base lodestar. Though Nutley does not give us a precise number, he suggests excluding that time causes the "effective multiplier [to] rocket[] past 2.15" and far beyond *Strack*'s allowance. Nutley's Opening Br. 41.

We agree with the district court that this is a close issue but one that ultimately does not disturb the award. As the district court explained and Nutley acknowledges, Oklahoma law allows attorneys to include reasonable time spent on application and defense of their fee award. *Burk*, 598 P.2d at 662. Lacking clear guidance on what counts as reasonable in this context, the district court determined that class counsel's advocacy was "zealous" but within "the bounds of reasonable professional judgment." App. 688. In support, the district court cited expert testimony attesting to the reasonableness of counsel's litigation strategy. App. 689. And it stressed that while counsel's efforts in this court and the Supreme Court were ultimately unsuccessful, its position on Oklahoma law was eventually vindicated in *Strack*.

The district court also gave the issue a hard look and reflected on its fiduciary duty to the class. App. 689 (citing *Strack*, 507 P.3d at 621). Indeed, as the court recognized, scrutinizing the views of objectors to ensure their interests are aligned with the absent class members is a part of that duty. *Id.* After reasoning that most class members implicitly approved the settlement and fee terms and noting the phenomenon of "professional objectors," the court determined it would best satisfy

21

its fiduciary duty by fully compensating counsel for its work through the conclusion of the case.  *Id.* at 689 & n.15.  The district court was convinced that class counsel's course was reasonable, and that full compensation would encourage high-quality representation for future class action litigants.  That decision was based on expert testimony and was not "arbitrary, capricious, or whimsical."  *Moothart*, 21 F.3d at 1504–05 (quoting *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987)).

Nutley's efforts to constrain what counts as "reasonable" to efforts that "contributed to establishing the recovery in the case" are unconvincing.  Nutley's Opening Br. 38.  He cites two cases to support his reading, but neither is on point.  In *Parsons v. Volkwagen of America, Inc.*, 341 P.3d 662 (Okla. 2014),[5] the Oklahoma Supreme Court held the trial court abused its discretion by allowing counsel to include time it spent on separate litigation for a different client in a different state.  Counsel argued it should be allowed to include the time because it was on a similar issue and helped him conclude *Parsons*.  *Id.* at 668.  The court was not convinced that "fees incurred in a cause independent of another may be collected in related litigation."  *Id.*  *Parsons* does not help Nutley because Chieftain's counsel did not include time that it spent on separate litigation.  Rather, it is claiming time spent on appeal to defend its fee award in the same case.

Nutley's second case, *Miller v. Magnus*, 452 P.3d 440 (Okla. Civ. App. 2019), fares no better.  *Miller* addressed apportionment of a fee award between counsel that

---

[5] The parties refer to this case by an alternate name, *Hess v. Volkswagen of Am., Inc.*

was dismissed after negotiating a tentative settlement agreement and new counsel

that eventually settled the case on identical terms.  *Id.* at 442–43.  The court's

decision to apportion the full fee award to the initial counsel was largely based on its

determination that the new counsel did not contribute to the settlement value.  *Id.* at

444.  Nutley thinks *Miller* stands for the principle that the reasonableness of

attorneys' fees is governed by contributions to the settlement.  But *Miller* only dealt

with apportionment of an already approved fee award; it said nothing about the

reasonableness of the award value.  *See id.*

George makes a more extravagant argument.  He believes the Oklahoma

Supreme Court's holding in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659

(Okla. 1979), that attorneys may include time spent working to secure their fees was

flat-out wrong.  And he says *Strack* overruled *Burk*, replacing it with a rule that

attorneys may only count time spent on services helpful to the litigation.  George is

mistaken about *Strack*, which adopted the "helpful to the litigation" standard for

incentive awards to class representatives, not attorneys' fees.  507 P.3d at 620 ("We

agree that *incentive awards* are justified as payment for reasonable services rendered

by class representatives on behalf of the class that were helpful to the litigation."

(emphasis added)).

While George's argument about *Burk*'s logic has some force, he's addressed it

to the wrong forum.  Admittedly, many jurisdictions do not allow attorneys in

common fund cases to charge for time spent securing their fees on the belief that

doing so "effectively reward[s] them for reducing the size of the common fund."

23

Rubenstein, *supra*, § 15:93 & n.4 (collecting cases and discussing so-called "fees-on-fees"). But we are bound by Oklahoma law, *Chieftain I*, 888 F.3d at 462, and *Burk* is clear that attorneys may recover for reasonable time spent on fee application and defense, 598 P.2d at 662–63. Of course, Oklahoma may change its rule to align with other jurisdictions if it wishes—we cannot.

Thus, the Objectors have not offered law or logic that persuades us the district court abused its discretion by including the time spent on appeals, as *Burk* presumptively allowed it to. At a minimum, time spent defending a first appeal of a fee award is allowed. *See Burk*, 598 P.2d at 662. It is a much closer question whether time spent on petitions for rehearing and certiorari are also permitted. We acknowledge that those petitions are extraordinary measures that typically have little chance of success, and the district court was right to view them skeptically. *See, e.g.*, 10th Cir. R. 40 (describing panel rehearing as "not routine" and en banc consideration as "extraordinary"). But we also cannot ignore that class counsel pursued a line of argument that was ultimately vindicated in Oklahoma court. The district court credited the litigation strategy as within the realm of professional judgment. Given the closeness of the issue and the district court's careful consideration of it, we find no abuse of discretion.

*Finally*, the Objectors argue class counsel's reconstructed time records should either be fully excluded or accorded reduced weight. They contend *Burk*'s admonition that "[a]ttorneys in [Oklahoma] should be required to present . . . detailed time records," prohibits awarding attorneys' fees based on reconstructed records.

24

598 P.2d at 663.  But the Oklahoma Supreme Court has disavowed such a strict reading of *Burk*, and repeatedly affirmed that courts may award attorneys' fees based on reconstructed timesheets.  *Spencer v. Okla. Gas & Elec. Co.*, 171 P.3d 890, 895 n.20 (Okla. 2007) ("A fee award may be based on reconstructed records."); *Conti v. Rep. Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla. 1989) (explaining *Burk* requires "an adequate record upon which to judge the reasonableness of an attorney fee award" and finding no abuse of discretion when an award was based on reconstructed timesheets).

In conclusion, the district court conducted a by-the-books lodestar cross-check to evaluate its percentage-of-the-fund award.  It supported the reasonableness of the required lodestar multiplier by carefully analyzing the statutory factors and citing supporting evidence for its findings.  It properly considered class counsel's reconstructed time records.  And, as we discuss below, we find no error in the court's assessment of the factors.  Consequently, the district court's actions track *Strack*'s requirements and we discern no abuse of discretion.

### 4.    *Application of Oklahoma's Statutory Factors*

The Objectors also challenge the district court's application of the statutory factors to assess the reasonableness of the award under both the percentage and lodestar methodologies.  Upon review, the district court did not make any legal error in its interpretation of the statutory factors.  And none of its factual findings supporting its analysis of the factors rises to the level of clear error.

*First*, the Objectors argue that the district court wrongly double-counted several factors that are already included in the lodestar calculation. They identify five factors—(1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, and (9) the experience, reputation and ability of the attorney—that they contend are subsumed by the lodestar. And while they acknowledge that the district court properly discounted factor (1), the Objectors believe the court wrongly credited the remaining factors towards its lodestar enhancement.

We are unconvinced by the Objectors' double-counting argument. Within its analysis, the court acknowledged when a factor was fully or partially subsumed by the lodestar calculation and adjusted its impact accordingly. App. 695 ("[Time and labor required] is generally subsumed by the lodestar computation."); App. 696 ("Although [novelty and difficulty of the questions presented by the litigation] is partially reflected in the lodestar, the alignment is far from complete."); App. 696–97 ("The Court finds [preclusion of other employment], standing alone, weighs only slightly in favor of an enhancement."); App. 698 ("The Court gives [the experience, reputation and ability of the attorneys] some, but not great, weight because it is largely reflected in the attorneys' hourly rates for their services."). We are convinced that the district court was fully aware of the potential for double-counting and adequately discounted factors that posed such a risk. And since the Objectors do not

26

identify a clear factual error in the court's analysis of factors 1–4 and 9, we find no abuse of discretion.

*Second*, the Objectors contend the court misconstrued factor (11)—the nature and length of the professional relationship with the client. They argue the district court incorrectly considered class counsel's work "for other royalty holders through lobbying, marketing, or litigation activities 'in other forums.'" Nutley's Opening Br. 55. But their only argument against the court's consideration of that work is that "[n]o authority supports" doing so. *Id.* Despite this, they acknowledge that class counsel performed the work they want discounted "on Chieftain's behalf." *Id.* And the district court explained that "[c]lass counsel have represented [Chieftain] in other cases for several years." App. 699. The Objectors also leave out that the district court was referring to class counsel's work within "other forums *in the state*"; an important detail that bears on the nature of class counsel's work to shape Oklahoma law in ways favorable to royalty owners—including the class members. *Id.* The district court's consideration of class counsel's prior and ongoing work for Chieftain falls within the factor's plain meaning. And since the Objectors do not give any authoritative citation or fleshed out legal argument showing that the court erred, we discern no abuse of discretion.

*Finally*, the Objectors attack the district court's determination that factor (8)—the amount in controversy and the results obtained—warranted substantial enhancement. They challenge the district court's decision on two grounds. To begin, they argue the district court erred as a matter of law because caselaw from other

jurisdictions has held the factor is typically subsumed within other factors and should not form an independent basis for an enhancement. *E.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 (1984) (identifying "results obtained" as one of the federal common law *Johnson* factors and determining it "normally should not provide an independent basis for increasing the fee award"). That argument fails because Oklahoma caselaw has "long recognized the importance of the relationship between the amount sued for . . . and the results obtained." *Parsons*, 341 P.3d at 670 & n.22 (collecting cases). Further, the district court based its lodestar enhancement on multiple factors, and we are unconvinced that its statement that "[t]his factor *also* merits a substantial enhancement" indicates it considered the factor in a vacuum. App. 698 (emphasis added).

Next, the Objectors say the district court overstated class counsel's success because it did not consider the full value of the amount in controversy. The class's complaint included a demand for interest on the alleged underpayment, and Oklahoma statute mandates an interest rate of 12%, compounded annually, on untimely payments to royalty owners. *See* Okla. Stat. tit. 52, § 570.10(D)(1). The Objectors argue the district court's failure to consider statutory interest caused it to grossly underestimate the amount in controversy and so to overestimate the settlement's relative value. But the Objectors have not preserved this argument because, as they acknowledge, they first raised the issue "in the objection period after *Chieftain II*." Nutley's Opening Br. 50. Since the district court included its analysis of the factor in its 2022 Fee Order, the Objectors could have addressed the issue in

their briefs for *Chieftain II*.  Their failure to do so constituted forfeiture, *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014), and "non-jurisdictional arguments a party forfeits on appeal may not be asserted on remand," *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1093 (10th Cir. 2015) (citation modified).  As a result, this new argument was improper before the district court on remand and we will not consider it on appeal.

We find no merit in Objectors' remaining arguments challenging the district court's analysis of the statutory factors.  Aside from the legal questions just discussed, the court's assessment of the factors consists largely of factual determinations that are subject to clear error review.  The Objectors never mention that standard or even imply that the court's alleged errors meet it.  Clear error is highly deferential and requires us "to uphold any district court determination that falls within a broad range of permissible conclusions."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990).  In the few instances where the Objectors identify evidence supporting their position, that evidence is alone insufficient to prove clear error.  *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1161 (10th Cir. 2007) ("[P]ointing to conflicting evidence inconsistent with the district court's finding is insufficient, standing alone, to establish clear error . . . .").  The district court's order cites record evidence for each of its findings on the statutory factors and we will not displace its well-supported determinations.

29

## III.  Conclusion

Oklahoma law requires that attorneys' fees awards in class actions be reasonable—an inquiry left to the factfinder.  *Strack*, 507 P.3d at 614.  The district court assessed its award's reasonableness by weighing it against Oklahoma's statutory factors and conducting a lodestar cross-check.  And since the district court justified its modest break with *Strack*'s guideline ranges, it did not abuse its discretion.

We affirm.